Richard FIESS and Stephanie
Fiess, Appellants,

v.

STATE FARM LLOYDS, Appellee.

No. 04–1104.

Supreme Court of Texas.

Argued March 30, 2005.

Decided Aug. 31, 2006.

Robert G. Miller and Jason Matthew Medley, O'Donnell Ferebee & McGonigal, P.C., Houston, for Appellants.

Christopher W. Martin and Levon G. Hovnatanian, Martin Disiere Jefferson & Wisdon, L.L.P., James Christopher Diamond, Western Litigaion Specialists, Inc., William J. Boyce, Fulbright & Jaworski L.L.P., Houston, for Appellee.

Greg Abbott, Atty. Gen., Sarah C. Wells, Asst. Atty. Gen., Barry Ross McBee, Edward D. Burbach, David C. Mattax, Chief Financial Litigation, Austin, Amicus Curiae for Texas Department of Insurance.

William J. Chriss, Corpus Christi, Amicus Curiae pro se.

Rick H. Rosenblum, Akin, Gump, Strauss, Hauer & Feld, San Antonio, Amicus Curiae for Allstate Texas Lloyds Company.

Warren W. Harris, Bracewell & Giuliani, LLP, Houston, Amicus Curiae for Farmers Insurance Exchange and Fire Insurance Exchange.

Tynan Buthod, Baker & Botts, L.L.P., Houston, Amicus Curiae for Texas Farm Bureau Mutual Insurance Company.

Christopher Lee Burke, Miller & Burke, P.C., San Antonio, Amicus Curiae for Texas Select Lloyds Insurance Company.

Donna C. Peavier, Uloth & Peavier, LLP, Dallas, Amicus Curiae for J. Ralph Choate.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

The question in this case is not whether insurers should provide mold coverage in Texas, a public policy question beyond our jurisdiction as a court. The question instead is whether the language in an insurance policy provides such coverage—no more and no less.

The rules for construing insurance policies have been around for a long time, long before this dispute arose. Those rules require us to construe a policy according to what it says, not what regulators or individual insurers thought it said. Ambiguities in the plain language must be settled in favor of consumers, but they must appear in the policy itself—we cannot create ambiguities from previous policies, an agency's interpretation, or a "mold crisis."

The policy here provides that it does not cover "loss caused by mold." While other parts of the policy sometimes make it difficult to decipher, we cannot hold that mold damage is covered when the policy expressly says it is not. Accordingly, we answer the Fifth Circuit's certified question "No."

## I. "We do not cover loss caused by mold"

This case comes to us on a certified

question [1] from the United States Court of Appeals for the Fifth Circuit, which asks us:

> Does the ensuing loss provision contained in Section I–Exclusions, part 1(f) of the Homeowners Form B (HO–B) insurance policy as prescribed by the Texas Department of Insurance effective July 8, 1992 (Revised January 1, 1996), when read in conjunction with the remainder of the policy, provide coverage for mold contamination caused by water damage that is otherwise covered by the policy? [2]

The policy provision in question provides as follows:

We do not cover loss caused by:

> (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.
>
> (2) rust, rot, mold or other fungi.
>
> (3) dampness of atmosphere, extremes of temperature.
>
> (4) contamination.
>
> (5) rats, mice, termites, moths or other insects.

We do cover ensuing loss caused by collapse of the building or any part of the building, water damage, or breakage of glass which is part of the building if the loss would otherwise be covered under this policy. [3]

■■■ The rules for construing this provision are well settled. If a policy provision has only one reasonable interpretation, it is unambiguous and we must construe it as a matter of law. [4] If an exclusion has more than one reasonable interpretation, we must construe it in favor of the insured as long as that construction is not unreasonable. [5] A policy provision is not ambiguous merely because different parties or different courts have interpreted it differently. [6]

■■■ As with any other contract, the parties' intent is governed by what they said, not by what they *intended* to say but did not. [7] Moreover, in cases like this involving a standard form policy mandated by a state regulatory agency, we have held for more than 100 years that the actual intent of the parties is not what counts (as they did not write it), but the ordinary, everyday meaning of the words to the general public. [8]

**1.** *See* Tex. Const. art. V, § 3–c; Tex R.App. P. 58.1.

**2.** 392 F.3d 802, 811–812 (5th Cir.2004).

**3.** We do not address personal property coverage under paragraph 9 (accidental discharge, leakage or overflow of water) of the HO–B policy because the Fifth Circuit Court of Appeals concluded that the Fiesses failed to appeal that issue. *Id.* at 805 n. 5.

**4.** *Texas Farm Bureau Mut. Ins. Co. v. Sturrock,* 146 S.W.3d 123, 126 (Tex.2004); *E. Texas Fire Ins. Co. v. Kempner,* 87 Tex. 229, 27 S.W. 122, 122 (1894).

**5.** *Nat'l Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991); *Glover v. Nat'l Ins. Underwriters,* 545 S.W.2d 755, 762, 763 (Tex.1977); *Continental Cas.*

*Co. v. Warren,* 254 S.W.2d 762, 763 (Tex. 1953).

**6.** *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 465 (Tex.1998); *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 459 (Tex.1997).

**7.** *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex.1998) ("Our primary goal, therefore, is to give effect to the written expression of the parties' intent."); *Nat'l Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex.1995); *Univ. C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

**8.** *See Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 551 (Tex.2003) ("[W]here the policy forms are mandated by a state regulatory agency … we look to determine

■ In this case, it is hard to find any ambiguity in the ordinary meaning of "We do not cover loss caused by mold." While the ensuing-loss clause that follows may be difficult to parse (a matter discussed below), few ordinary people would imagine that it changes the meaning of the first sentence to read "We *do too* cover loss caused by mold."

■ The dissent finds this policy ambiguous, primarily by construing the preceding HO–B policy, on the basis that no change was intended when that form was dropped in 1990. Evidence of prior policies is extrinsic evidence, and thus inadmissible unless this policy is ambiguous.[9] Ambiguity must be evident from the policy itself; it cannot be created by introducing parol evidence of intent.[10] And while we have looked at a prior policy in deciding between reasonable constructions of a current one,[11] we have never done so in lieu of construing the current one at all. Given

the ordinary, everyday meaning of the words to the general public."); *U.S. Ins. Co. of Waco v. Boyer,* 153 Tex. 415, 269 S.W.2d 340, 341 (1954) ("While undoubtedly in the early days of the insurance business the actual intent of the immediate parties to the contract was material, now with the insurance business regulated and the policy forms prescribed by a State Insurance Commission, the court in construing a policy determines the everyday meaning of the words to the general public-the meaning of the words 'in common parlance'—'the usual and popular understanding of the term.' "); *Mutual Life Ins. Co. v. Simpson,* 88 Tex. 333, 31 S.W. 501, 502 (1895) ("[C]ontracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense.").

9. *Sharp v. State Farm Fire and Cas. Ins. Co.,* 115 F.3d 1258, 1262 (5th Cir.1997); *Balandran,* 972 S.W.2d at 741; *CBI,* 907 S.W.2d at 520–21.

10. *See CBI,* 907 S.W.2d at 521.

the complexities found in most insurance policies, it is surely wiser to stick with our long-standing legal rule that insurance policies must be construed one policy at a time.

■ Nor can we agree with the dissent that this policy is ambiguous because the Texas Department of Insurance advances an interpretation that, while not convincing, is a reasonable alternative to our own. It is true that courts give some deference to an agency regulation containing a reasonable interpretation of an ambiguous statute.[12] But there are several qualifiers in that statement. First, it applies to formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions in documents like the Department's amicus brief here.[13] Second, the language at issue must be ambiguous; an agency's opinion cannot change plain language.[14] Third, the agen-

11. *See Balandran,* 972 S.W.2d at 741–42.

12. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *City of Corpus Christi v. Public Utility Com'n of Texas,* 51 S.W.3d 231, 261 (Tex. 2001).

13. *See Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (refusing to defer to agency policy statements, agency manuals, and enforcement guidelines lacking the force of law); *see also Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 256–258, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991); *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991).

14. *See Pretzer v. Motor Vehicle Bd.,* 138 S.W.3d 908, 915 (Tex.2004); *Continental Cas. Co. v. Downs,* 81 S.W.3d 803, 807 (Tex.2002); *City of Corpus Christi,* 51 S.W.3d at 261; *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 273 (1944).

cy's construction must be reasonable;[15] alternative *unreasonable* constructions do not make a policy ambiguous.[16] An agency's opinion can help construe an existing ambiguity, but it cannot *create* one; that the Department agrees with the Fiess's construction does not make this policy ambiguous.[17]

Moreover, neglecting what this policy says in favor of what the Department says it intended would raise a host of other problems. First, construing a statewide policy according to what a single regulator, insurer, or insured thought about it would bind many others without hearing what they might have intended. Second, even if no change was intended in 1990, that does not tell us what anyone intended *before* 1990, an issue we have never addressed. And finally, deriving intent from extrinsic evidence raises a fact question for jurors, not judges;[18] while ambiguous exclusions must be construed in favor of the insured as long as that construction is not unreasonable,[19] ambiguous intentions are not governed by the same legal rule.

We must of course consider an insurance policy in its entirety. But in doing so, we cannot overlook the obvious—that the policy provision here begins by stating unambiguously, "We do not cover loss caused by mold."

## II. "We do cover ensuing loss caused by water damage …"

The Fiess's argue that we must disregard how this policy provision starts ("We do not cover loss caused by mold") because of how it ends ("We do cover ensuing loss caused by water damage"). We disagree; it has again long been the rule that we must read all parts of a policy together, giving meaning to every sentence, clause, and word to avoid rendering any portion inoperative.[20]

In *Lambros v. Standard Fire Insurance Co.*,[21] homeowners alleged underground water cracked the slab of their home. Like the policy here, their policy excluded losses due to cracked foundations, but also stated that this exclusion "shall not apply to ensuing loss caused by … water damage." Justice Cadena writing for the Fourth Court of Civil Appeals found that the only reasonable construction of this clause was that it applied when an excluded risk was followed by an intervening occurrence that in turn caused an ensuing loss:

15. *Downs*, 81 S.W.3d at 807 (Tex.2002); *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993); *Stanford*, 181 S.W.2d at 273; *cf. Christensen*, 529 U.S. at 587, 120 S.Ct. 1655 (stating that agency opinions are entitled to respect to the extent of their power to persuade).

16. *See Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998). As we have noted before, reasonable people sometimes disagree about what is reasonable. *See City of Keller v. Wilson*, 168 S.W.3d 802, 828 (Tex. 2005).

17. *See Downs*, 81 S.W.3d at 807 ("[T]hat the Commission agrees with Continental's construction does not make that construction any more persuasive.").

18. *See* COUCH ON INSURANCE 3d § 21.13 ("If, however, ambiguous words are to be construed in light of the extrinsic evidence, or of the surrounding circumstances, the meaning of such words becomes a question of fact for the jury."); *see also Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex.1988).

19. *See Hudson Energy Co.*, 811 S.W.2d at 555.

20. *Balandran*, 972 S.W.2d at 741; *Liberty Mut. Ins. Co. v. Am. Emp. Ins. Co.*, 556 S.W.2d 242, 245 (Tex.1977); *Pan Am. Life Ins. Co. v. Andrews*, 161 Tex. 391, 340 S.W.2d 787, 790 (1960).

21. 530 S.W.2d 138 (Tex.Civ.App.-San Antonio 1975, writ ref'd).

To "ensue" means "to follow as a consequence or in chronological succession; to result, as an ensuing conclusion or effect." An "ensuing loss," then, is a loss which follows as a consequence of some preceding event or circumstance.... If we give to the language of the exception its ordinary meaning, we must conclude that an ensuing loss caused by water damage is a loss caused by water damage where the water damage itself is the result of a preceding cause. What is the preceding cause which gives to the exception the effect of taking the ensuing loss out of the reach of exception k [the foundation exception]? Again, the plain language of the exception compels the conclusion that the water damage must be a consequence, i.e., follow from or be the result of the types of damage enumerated in exception k. "Ensuing loss caused by water damage" refers to water damage which is the *result*, rather than the *cause*, of "settling, cracking, ... of foundations ..." [22]

This Court refused the application for writ of error, thus giving the *Lambros* opinion the same force and effect as one of our own.[23]

The part of the ensuing-loss clause at issue in *Lambros* is indistinguishable from the part at issue here. The Department of Insurance asserts that the *Lambros* policy covered fewer water risks and the homeowners' claim did not involve mold. But the relevant ensuing-loss language has changed in no material respect; that *Lambros* involved a different house, different homeowners, and a different insurer does not make it distinguishable. If *Lambros* is still the law, then this clause too applies only to losses caused by an intervening cause (like water damage) that in turn follow from an exclusion listed in paragraph 1(f).

The Fiesses and the Department make several arguments for construing ensuing-loss clauses differently, but all would require reversing *Lambros*. That of course is not out of the question; our opinions are not like the law of the Medes and the Persians—unalterable once written.[24] But we are bound to consider the principles of stare decisis before taking such a step.

■■■ Stare decisis has its greatest force in cases construing statutes, partly because our errors may be corrected by statutory amendments.[25] Although *Lambros* did not construe a statute, it was the next thing to it—a mandatory policy form promulgated by a state agency that private parties could not alter. If our policy interpretation in *Lambros* was wrong, it is strange that insurance regulators did noth-

---

**22.** *Id.* at 141 (citations omitted) (emphasis added).

**23.** *See* Tex.R.App. P. 56.1(c); *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 181 (Tex.2004); *Texas Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 199 (Tex.1997).

**24.** *See* Daniel 6:12; 4 Matthew Henry's Commentary 1067 ("The Persians magnified the wisdom of their king, by supposing that whatever law he solemnly ratified it was so well made that there could be no occasion to alter it, or dispense with it, as if any human foresight could, in framing a law, guard against all inconveniences.").

**25.** *See Grapevine Excavation, Inc. v. Md. Lloyds*, 35 S.W.3d 1, 6 (Tex.2000) (Gonzalez, J., concurring) ("[E]nacting statutes is within the unique province of the Legislature, and as to statutes, the ultimate interpretation is within their hands"); *accord, Quill Corp. v. North Dakota*, 504 U.S. 298, 320, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (Scalia, J., concurring) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 172–173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) ("Considerations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.")).

ing to change the policy for a quarter century. Accordingly, we decline the invitation to overrule it.

### III. "... caused by water damage ..."

Nor can we disregard how this policy provision starts ("We do not cover loss caused by mold") because of how it ends ("We do cover ensuing loss caused by water damage"), as the latter is not as broad as the Fiesses suggest. By its own terms, paragraph 1(f) covers only ensuing losses from water *damage*, not water alone.

The parties disagree whether mold stemming from the small roof and window leaks at issue here would constitute "water damage."[26] While we have never construed "water damage" in the Texas homeowners ensuing-loss clause, the legendary Henry Friendly[27] did (sitting with the Fifth Circuit by designation), and concluded that inadequate ventilation that led to condensation that eventually caused a floor to rot away did not fall within the Texas ensuing-loss clause because the rot was caused by water, not "water damage":

> We do not think that a single phenomenon that is clearly an excluded risk under the policy was meant to become compensable because in a philosophical sense it can also be classified as water damage; it would not be easy to find a case of rot or dampness of atmosphere not equally subject to that label and the exclusions would become practically meaningless. In our case the rot may have ensued from water but not from water damage, and the damage ensuing from the rot was not the damage from the direct intrusion of water conveyed by the phrase "water damage."[28]

Surely Judge Friendly was correct. Mold does not grow without water; if every leak and drip is "water damage," then it is hard to imagine any mold, rust, or rot excluded by this policy, and the mold exclusion would be practically meaningless.

The 15 risks excluded by paragraph 1(f)—rust, rot, mold, humidity, wear and tear, hot and cold weather, rats, termites, and so on—all damage a home incrementally; when they cause major damage, generally the home was not destroyed in a day. These 15 risks are also very common; construing the HO–B policy to cover them all would convert it from an insurance policy into a maintenance agreement.

Instead, the ensuing-loss clause provides coverage only if these relatively common and usually minor risks lead to a relatively uncommon and perhaps major loss: building collapse, glass breakage, or water damage. In construing the last term, we are governed by the traditional canon of construction *noscitur a sociis*—"that a word is known by the company it keeps."[29]

---

26. The Fiesses recovered under a separate policy for mold caused by Tropical Storm Allison, and failed to preserve a claim for mold caused by air-conditioning and plumbing leaks. *See Fiess*, 392 F.3d at 804, 807.

27. *See Finley v. U.S.*, 490 U.S. 545, 565 n. 18, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (noting Friendly "is universally recognized ... as one of our wisest judges"); Paul Freund, *In Memoriam: Henry J. Friendly*, 99 HARV. L.R. 1709, 1715 (noting Friendly "was not merely a legend in his own time..."); Richard A. Posner, *id.* at 1724 ("He was the greatest federal appellate judge of his time-in analytic power, memory, and application perhaps of any time. His opinions have exhibited greater staying power than that of any of his contemporaries on the federal courts of appeals.").

28. *See Aetna Cas. & Sur. Co. v. Yates*, 344 F.2d 939, 941 (5th Cir.1965) (construing clause stated in part stating that exclusions "shall not apply to ensuing loss caused by ... water damage").

29. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (noting that the purpose of this rule is "to avoid

Accordingly, "water damage" like its neighbors "building collapse" and "glass breakage" must refer to something more substantial than every tiny water leak or seep. Applying this traditional rule of construction, ordinary people would read paragraph 1(f) to provide coverage for the kinds of uncommon and catastrophic losses for which homeowners obtain insurance, not for the common maintenance items for which they do not.

We need not decide today the precise scope of "water damage" in the ensuing-loss clause, an issue not framed by the certified question. The issue we do decide is that a policy exclusion for "mold" cannot be disregarded by simply deeming all mold to be "water damage."

### III.  "... if the loss would otherwise be covered under this policy"

All members of the Court affirm *Lambros* and refuse to construe the ensuing-loss clause outside its context. But the dissent would hold that the ensuing-loss clause cancels the mold exclusion of which it is a part, because its last phrase ("if the loss would otherwise be covered under this policy") requires us to disregard paragraphs 1(f), 1(g), and 1(h) of the policy. Clearly, removing the 22 exclusions in those paragraphs would create mold coverage, but it would also create a different policy. To qualify as an ensuing loss, mold must "otherwise be covered under *this* policy."

Here, the first sentence of 1(f) excludes mold, and the second sentence extends coverage to ensuing losses caused by water damage. If neither sentence said anything more, the two would conflict whenev-

er water damage (covered) caused mold (excluded). But 1(f) resolves this potential conflict by limiting the second clause—the ensuing-loss clause—whenever it conflicts with anything else in the policy. By placing this proviso where it is, the only reasonable construction is that the second sentence (covering ensuing losses) must yield to the first (excluding mold), not the other way around.

This does not, as the dissent suggests, delete "otherwise" from paragraph 1(f). "Otherwise" when used as an adverb means "in a different way or manner; in different circumstances";[30] it does not mean we should disregard the immediately preceding sentence. Assume, for example, that the flight schedule of a certain airline stated:

We do not fly from Dallas to Denver.

We do fly from Dallas to all cities otherwise listed in this flight schedule.

No reasonable reader would think "otherwise" means we should disregard the preceding sentence and assume the airline really *does* fly from Dallas to Denver.

The dissent would rewrite the ensuing-loss clause here to provide coverage "if the loss would otherwise be covered under this policy *not counting the exclusions in paragraph 1(f), 1(g), and (h)*." But those exclusions *are* part of the policy; a policy without exclusions for rust, rot, mold, wear and tear, and termites is simply a different policy. This would be policy "construction" in the architectural rather than the legal sense.

Moreover, the upshot of the dissent's construction would be that the more risks *excluded* in a policy containing an ensuing-loss clause, the *broader* coverage

---

ascribing to one word a meaning so broad that it is inconsistent with its accompanying words."); *see also* BLACK'S LAW DICTIONARY 1087 (8th ed. 2004) ("[Latin for 'it is known by its associates'] A canon of construction holding that the meaning of an unclear word

or phrase should be determined by the words immediately surrounding it.").

**30.** WEBSTER'S NEW COLLEGIATE DICTIONARY 835 (9th ed.1985).

would become. Paragraphs 1(f), 1(g), and 1(h) of the HO–B policy contain roughly 22 exclusions, and each has an ensuing-loss clause listing 3 intervening risks (building collapse, water damage, and glass breakage). According to the dissent, if any one of the 22 exclusions combines with any one of the 3 intervening risks to cause any of the 22 excluded losses, the loss is no longer excluded. This would mean there are only about 1,452 possible ways to turn exclusions into coverage.[31] Thus, the more exclusions that are added, the broader coverage gets. This cannot possibly be a reasonable construction.

Finally, a "yes" answer to the certified question today would give ensuing-loss clauses in Texas a different meaning from what they have in most other American jurisdictions. These clauses are common in all-risk policies, and while rarely identical they share more similarities than differences.[32] Accordingly, we should strive for uniformity in construing them.[33] But the Fiess's argument that an ensuing-loss clause can make an excluded loss reappear as a covered loss has been rejected by courts in Alabama,[34] Arizona,[35] California,[36] Florida,[37] Illinois,[38] Massachusetts,[39] Minnesota,[40] New York,[41] North Carolina,[42] New Hampshire,[43] Ohio,[44] Pennsylvania,[45]

**31.** That is, $22 \times 3 \times 22 = 1,452$. *See* SHELDON ROSS, A FIRST COURSE IN PROBABILITY 2–3 (7th ed.2006) (noting that multiplying possibilities of each of a sequence of events produces the total possible outcomes). It is true that some combinations are unlikely, such as wear-and-tear followed by glass breakage that causes mice. But with 1,452 to choose from, no doubt plenty of options remain.

**32.** For example, decisions in a number of jurisdictions address ensuing-loss clauses containing the same three intervening causes (building collapse, water damage, and glass breakage) as the HO–B policy. *See, e.g., Souza v. Corvick*, 441 F.2d 1013, 1016 (D.C.Cir. 1970); *N.Z. Ins. v. Lenoff*, 315 F.2d 95, 95 n. 1 (9th Cir.1963); *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 532 A.2d 1297, 1298 n. 1 (1987); *Phoenix Ins. Co. v. Branch*, 234 So.2d 396, 398 (Fla.Dist.Ct.App.1970); *Nationwide Ins. Co. v. Warren*, 675 S.W.2d 402, 403 (Ky. Ct.App.1984); *Shields v. Pa. Gen. Ins. Co.*, 488 So.2d 1252, 1253 (La.Ct.App.1986); *Cantrell v. Farm Bureau Town & Country Ins. Co. of Mo.*, 876 S.W.2d 660, 662 (Mo.Ct.App.1994); *Umanoff v. Nationwide Mut. Fire Ins.*, 110 Misc.2d 474, 442 N.Y.S.2d 892, 893 (1981).

**33.** *See Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 522 (Tex.1995).

**34.** *See Schloss v. Cincinnati Ins. Co.*, 54 F.Supp.2d 1090, 1098 (M.D.Ala.1999), *aff'd*, 211 F.3d 131 (11th Cir.2000).

**35.** *See Cooper v. Am. Family Mut. Ins. Co.*, 184 F.Supp.2d 960, 964 (D.Ariz.2002).

**36.** *See Murray v. State Farm Fire & Cas. Co.*, 219 Cal.App.3d 58, 65, 268 Cal.Rptr. 33 (Cal. Ct.App.1990).

**37.** *See Church of the Palms–Presbyterian (U.S.A.), Inc. v. Cincinnati Ins. Co.*, 404 F.Supp.2d 1339, 1342 (M.D.Fla.2005).

**38.** *See Bd. of Educ. of Maine Township v. Int'l Ins. Co.*, 292 Ill.App.3d 14, 225 Ill.Dec. 987, 684 N.E.2d 978, 984 (1997).

**39.** *See Ames Privilege Assocs. Ltd. P'ship v. Utica Mut. Ins. Co.*, 742 F.Supp. 704, 708 (D.Mass.1990).

**40.** *See Myers v. State Farm Fire & Cas. Co.*, 2002 WL 1547673 *6 (Minn.Ct.App. July 16, 2002).

**41.** *See Narob Dev. Corp. v. Ins. Co. of N. Am.*, 219 A.D.2d 454, 631 N.Y.S.2d 155 (N.Y.App. Div.1995).

**42.** *See Alwart v. State Farm Fire & Cas. Co.*, 131 N.C.App. 538, 508 S.E.2d 531, 533–34 (1998).

**43.** *See Weeks v. Coop. Ins. Cos.*, 149 N.H. 174, 817 A.2d 292, 296 (2003).

**44.** *See Boughan v. Nationwide Prop. & Cas. Co.*, 2005 WL 126781 *3 (Ohio Ct.App. Jan.24, 2005).

Vermont,[46] Washington,[47] and Wisconsin.[48] There would have to be something very peculiar about the Texas ensuing-loss clause for its results to be so very different from similar clauses used everywhere else.

## V. Conclusion

Courts adhere to prior precedents for reasons of efficiency, fairness, and legitimacy.[49] For more than a century this Court has held that in construing insurance policies "where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction."[50] If the political branches of Texas government decide that mold should be covered in Texas insurance policies, they have tools at their disposal to do so; Texas courts must stick to what those policies say, and cannot adopt a different rule when a "crisis" arises.[51]

Accordingly, for the reasons and to the extent stated in this opinion, we answer the certified question "No."

Justice MEDINA filed a dissenting opinion, in which Justice O'NEILL joined.

Justice MEDINA, joined by Justice O'NEILL, dissenting.

This case comes to us on a certified question from the United States Court of Appeals for the Fifth Circuit asking us to determine under what circumstances, if any, the "ensuing-loss" provision of the Homeowners Form B (HO–B) insurance policy[1] provides coverage for mold contamination. In answering that question, the Court concludes that mold can never be an ensuing loss within the meaning of that provision. The Court reasons that the ensuing-loss provision is not an exception to the excluded perils it modifies but rather an assurance that covered losses remain covered even when they ensue from an excluded peril. Because I believe that the ensuing-loss clause may also be read as an exception to the excluded perils it modifies, it is susceptible to more than one reasonable interpretation and is therefore ambiguous. As the Court acknowledges, such ambiguities must be construed in favor of the insured. Applying that rule of construction here requires that we answer yes to the question certified to us by the Fifth Circuit Court of Appeals. Be-

**45.** *See Banks v. Allstate Ins. Co.*, 1993 WL 40113 *5 (E.D.Pa. Feb.12, 1993).

**46.** *See Vt. Elec. Power Co., v. Hartford Steam Boiler Inspection and Ins. Co.*, 72 F.Supp.2d 441, 445 (D.Vt.1999).

**47.** *See McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 837 P.2d 1000, 1005–06 (1992).

**48.** *See Richland Valley Prod. Inc. v. St. Paul Fire & Cas. Co.*, 201 Wis.2d 161, 548 N.W.2d 127, 133 (Ct.App.1996). *But see Phillips v. United Services Auto. Ass'n*, 146 S.W.3d 629, 635–36 (Tenn.Ct.App.2004) (holding rot, though excluded clause, was covered by ensuing-loss provision).

**49.** *See Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex.1995).

**50.** *E. Texas Fire Ins. Co. v. Kempner*, 87 Tex. 229, 27 S.W. 122, 122 (1894).

**51.** *Weiner*, 900 S.W.2d at 320 ("[T]he legitimacy of the judiciary rests in large part upon a stable and predictable decision making process that differs dramatically from that properly employed by the political branches of government.").

**1.** The specific policy at issue in this matter is the Homeowners Form B (HO–B) insurance policy as prescribed by the Texas Department of Insurance effective July 8, 1992, and revised January 1, 1996. Throughout this opinion, all references to "the policy" are references to the HO–B policy.

cause the Court does not, I respectfully dissent.

I

In 2001, the home of Richard and Stephanie Fiess sustained substantial flood damage from Tropical Storm Allison. When the Fiesses began removing drywall damaged by the flood, they discovered black mold growing throughout the house. The Fiesses sent samples of the mold to a laboratory for analysis. The examiner concluded that the samples contained hazardous stachybotrys mold, which, in his opinion, made the house dangerous to inhabit. Upon subsequent examination of the Feiss house, the examiner concluded that the flooding had caused some of the mold contamination, but a significant percentage of the mold had been caused by roof leaks, plumbing leaks, heating, air conditioning and ventilation leaks, exterior door leaks, and window leaks before the flood.

The Fiesses submitted a claim for mold damage under their homeowner's insurance policy, which explicitly excluded all damage caused by flooding. Their insurance carrier, State Farm Lloyds ("State Farm"), inspected the home and, under a reservation of rights, paid the Fiesses $34,425.00 for mold remediation in those areas of the home where evidence of small pre-flood water leaks existed. Under its reservation of rights, State Farm maintained that it was not obligated to pay for mold damage.

Believing State Farm's payment to be inadequate to remediate the mold damage not caused by the flood, the Fiesses filed suit in state court. State Farm thereafter removed the case to federal court, where it obtained a summary judgment. The federal district court concluded that the policy specifically excluded mold contamination from coverage and that the ensuing-loss provision had no effect upon this exclusion. The Fiesses appealed, arguing [2] that coverage for the mold at issue was extended under the policy's ensuing-loss clause. Concluding that the meaning of this clause was an unresolved question of state law important to both Texas homeowners and insurers and appropriate for decision by this Court, the Fifth Circuit certified the question to us.

II

We have previously considered the meaning of the "ensuing-loss" provision in an earlier version of the HO–B policy, but not in connection with mold damage. In *Lambros v. Standard Fire Insurance Co.*, a home sustained structural damage when pressure from subsurface water caused the foundation to shift. 530 S.W.2d 138 (Tex. Civ.App.-San Antonio 1975, writ ref'd). Exclusion k of the homeowner's insurance policy excluded loss caused by foundation movement, but the policy's "ensuing-loss" provision stated that "Exclusions i, j, and k ... shall not apply to ensuing loss caused by ... water damage ... provided such losses would otherwise be covered under this policy." *Id.* at 139. The homeowners argued that the damage to their foundation should be covered because the policy's ensuing-loss provision provided for recovery for losses caused by water damage. The court of appeals disagreed, holding that " 'ensuing loss caused by water damage' refers to water damage which is the

2. The Feisses also argued that coverage should be extended to all mold contamination in their home caused by plumbing and HVAC leaks under another provision of the policy pertaining to the accidental discharge of water or steam from such systems. However, the Fifth Circuit concluded that the Feisses had waived the issue by failing to include it as a proper part of their appeal. 392 F.3d at 806.

result, rather than the cause," of the excluded event; i.e., foundation movement. *Id.* at 141. The court explained that "[t]o 'ensue' means 'to follow as a consequence or in chronological succession; to result, as an ensuing conclusion or effect.'" *Id.* (quoting Webster's New International Dictionary 852 (2d ed, unabridged, 1959). Thus, "an ensuing loss caused by water damage is a loss caused by water damage where the water damage itself is the result of a preceding cause," the preceding cause being one of the named, excluded perils. *Id.* This interpretation suggests a three-step causal formula, requiring: (1) a preceding cause (one of the excluded perils) leading to, (2) a proximate cause (building collapse, water damage, or glass breakage) resulting in, (3) an ensuing loss. We likewise accepted this three-step analysis by refusing the writ in the case. *See State ex rel McWilliams v. Town of Oak Point,* 579 S.W.2d 460, 462–63 (Tex.1979) (notation "refused" indicates this Court's adoption of the court of appeals' judgment and opinion).

*Lambros,* however, only dealt with the first element of its three-step formula. Because the water damage was not caused by an excluded peril (the shifting foundation), the court held it was not covered under the ensuing-loss provision. Conversely, had the water damage been caused by an excluded peril, there might have been coverage if such loss would otherwise have been covered under the policy.

*See Lambros,* 530 S.W.2d at 141.[3] But because there was no evidence of the requisite preceding cause, *Lambros* did not consider the balance of the provision; i.e., the types of damage an ensuing loss might include.

This Court has not mentioned *Lambros* since our refusal of the writ in that case more than thirty years ago. But the Court today again accepts its analysis of the ensuing-loss provision as correct, and I agree with this. —— S.W.3d at ——. Moreover, although *Lambros* construed an earlier version of the HO–B policy, the ensuing-loss provision here is nearly identical to the former clause and should be construed similarly. But *Lambros* addresses only part of the ensuing-loss clause and therefore does not provide a complete answer to our present question. Having determined that the loss did not ensue from an excluded peril, *Lambros* did not consider the balance of the provision or purport to explain the meaning of a loss "otherwise ... covered under this policy." To correctly define this type of loss, we must begin with the text of the ensuing-loss provision and the relevant exclusion to which it applies.

### III

Section I–Exclusions, part 1.f. of the HO–B insurance policy provides:

f. **We do not cover loss caused by:**

---

3. Lambros based its holding on two earlier cases which explained the meaning of "ensuing loss." *McKool v. Reliance Ins. Co.,* 386 S.W.2d 344, 345–346 (Tex.Civ.App.-Dallas 1965, writ dism'd) ("Giving to the words used [ensuing from] their ordinary meaning, we think it clearly appears therefrom that, although losses caused by extremes of temperature or cracking are not covered by the policy, all ensuing losses (meaning losses which follow or come afterwards as a consequence) caused by water damage are covered. In other words, the tile having cracked because of the extreme cold or ice, there could be no recovery therefor, but if water had entered through the cracks thus caused, the ensuing damage caused by the entry of the water would be recoverable."); *Park v. Hanover Insurance Co.,* 443 S.W.2d 940, 942 (Tex.Civ. App.-Amarillo 1969, no writ) (finding no coverage because exclusion at issue did not contain an ensuing-loss provision, but stating that ensuing loss is covered if it results from water damage caused by an excluded cause).

(1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

(2) rust, rot, **mold** or other fungi.

(3) dampness of atmosphere, extremes of temperature.

(4) contamination.

(5) rats, mice, termites, moths or other insects.

**We do cover ensuing loss caused by** collapse of building or any part of the building, **water damage** or breakage of glass which is part of the building **if the loss would otherwise be covered under this policy.**

(emphasis added).

The Fiesses argue that the ensuing-loss provision is an exception to the mold exclusion designed to apply to any loss caused by covered water damage. According to the Fiesses, this provision restores coverage for mold caused by water damage, as long as the water damage itself is not excluded by one of the other provisions in the policy. State Farm, on the other hand, argues that the ensuing-loss provision merely reaffirms coverage when one of the listed excluded losses causes a secondary loss that would "otherwise be covered under this policy." Because loss caused by mold is expressly excluded, however, State Farm concludes that it cannot be considered "otherwise [ ] covered under this policy." Thus, State Farm interprets "otherwise covered" under the policy to negate the ensuing-loss clause by reinstating the exclusion to which it applies.

William J. Chriss, as amicus curiae, argues that neither party has it right. Amicus submits that the Feisses interpret water damage from the ensuing-loss provision too broadly, essentially ignoring *Lambros* and reading "ensuing" out of the provision. The amicus further argues that State Farm's circular interpretation of the provision ignores the meaning of the word "otherwise," thus depriving the provision of virtually any meaning. Amicus submits that the correct and more reasonable construction of "otherwise be covered" is that it refers to the remainder of the policy other than the paragraph under consideration. Thus, according to the amicus, water damage including mold, which results from an excluded peril as *Lambros* requires, would be covered because such loss is not excluded anywhere else in the policy other than in paragraph f.

The Texas Department of Insurance, the author of the homeowner's policy at issue and the regulatory authority charged with ensuring compliance with state law in this area, also has filed an amicus brief that similarly disputes the Court's present policy construction. Even though mold itself is initially listed as an exclusion, the Department submits that it is nevertheless brought back into coverage by the ensuing-loss language of paragraph 1.f., which provides an exception to the exclusion for mold or other fungi if the mold loss ensues from a covered peril. The Department further rejects the Court's construction as rendering the ensuing-loss provision superfluous and concludes that the "provision can only be read to mean that despite any exclusion language, it includes coverage for certain previously excluded damage which is caused by a covered water loss."

Although I do not view this language to be as clear and unambiguous as the agency responsible for its inclusion in the policy, I do accept the Department's interpretation as an alternative reasonable construction. When the language of an insurance policy is capable of more than one reasonable interpretation, it is ambiguous, and when the ambiguity concerns an exclusionary provision, any uncertainty as to its mean-

ing must be resolved in favor of the insured. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991). Moreover, when language in a contract is capable of more than one reasonable interpretation, evidence extrinsic to the contract may be used to determine its intended meaning. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520–21 (Tex.1995). Relevant Texas case law, as well as the history of the ensuing-loss provision itself, support the view of the amicus that "otherwise . . . covered" refers to parts of the policy other than the paragraph connected to the ensuing-loss provision.

*Employers Casualty Co. v. Holm,* 393 S.W.2d 363 (Tex.Civ.App.Houston 1965, no writ), was the first Texas case to apply the provision in this manner. There, the excluded peril of inherent-vice was the preceding cause of water damage to a home. A shower in the home was built without a shower pan (an inherent vice) and the ensuing leak caused the wooden flooring to rot and deteriorate. After holding that the negligence of the contractor did not destroy the accidental nature of the loss, the court examined the inherent-vice exclusion and concluded that water damage ensuing from the excluded cause was covered under the ensuing-loss exception because it was not excluded elsewhere in the policy. The court held that any loss caused by water damage ensuing from an excluded cause is covered under the policy if: 1) the excluded cause has an ensuing-loss exception, and 2) such water damage is not of a type otherwise excluded under a separately enumerated exclusionary paragraph, such as damage from surface water or naturally occurring ground water; i.e., another exclusion in the policy at issue. *Holm* thus held that "otherwise covered" meant caused by a type of water damage not excluded by other exclusions containing no ensuing-loss provisions. *See also*

*Allstate Ins. Co. v. Smith,* 450 S.W.2d 957 (Tex.Civ.App.-Waco 1970, no writ) (following *Holm* ).

Similarly, in *Park v. Hanover Ins. Co.,* 443 S.W.2d 940, 942 (Tex.Civ.App.Amarillo 1969, no writ), the court stated that an ensuing loss is covered if it results from water damage and is not otherwise excluded under a different exclusionary paragraph. The court, however, found no coverage because the exclusion at issue did not contain an ensuing-loss provision.

Other courts have taken a more expansive view of the ensuing-loss provision, suggesting that it means nothing more than that the occurrence happened during the policy period, the insured complied with all conditions precedent and the like, and that all ensuing damage should therefore be covered. *See, e.g., Burditt,* 86 F.3d at 477 (ensuing-loss provision extends coverage to all loss ensuing from an excluded peril); *Merrimack Mut. Fire Ins. Co. v. McCaffree,* 486 S.W.2d 616, 620 (Tex.Civ. App.-Dallas 1972, writ ref'd n.r.e.) (mold caused by water damage ensuing from an excluded peril is covered if the excluded initial cause has an ensuing-loss provision); *McKool,* 386 S.W.2d at 345–46 ("[A]lthough losses caused by extremes of temperature or cracking are not covered by the policy, *all ensuing losses . . .* caused by water damages are covered.") (emphasis added). The history of the ensuing-loss provision, however, indicates that *Holm's* more restrictive application of the provision is the correct one.

Before 1990, the HO–B policy included one ensuing-loss provision placed at the end of the policy section listing eleven exclusions, a–k. Exclusion i in this list excepted from coverage:

i. Loss caused by inherent vice, wear and tear, deterioration; rust, rot, mould

or other fungi; dampness of atmosphere, ...;

j. * * *

k. * * *

**The foregoing** Exclusions a through k shall *not apply to ensuing loss caused by fire, smoke or explosion and* **Exclusions i, j and k [exclusions f, g, and h in the Fiesses' policy] shall not apply to ensuing loss caused by** collapse of building, or any part thereof, **water damage ..., provided such losses would otherwise be covered under this policy.**

*See Lambros,* 530 S.W.2d at 139 (emphasis added). In 1990, several exclusions were moved to different paragraphs, and the letters identifying them were changed accordingly. Paragraph i, (which had excluded losses caused by rust, rot, mold and several other causes), became paragraph f, paragraph j, (which had excluded losses cause by animals owned by the insured), became paragraph g, and paragraph k, (which had excluded losses caused by settling foundation), became paragraph h. The ensuing-loss provision was attached to each of the renumbered paragraphs. These revisions were not intended to restrict or change the scope of coverage[4] but merely to simplify the policy, making it easier to read. *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741–42 (Tex. 1998).

Although simplification was the intended purpose, the 1990 revisions have perhaps had the opposite effect. Before 1990, it seemed apparent that the "otherwise covered under this policy" language of the ensuing-loss provision referred to provisions of the policy other than those it identified as applicable. Thus the pre-1990 policy expressly stated that the ensuing-loss provision superceded exclusions i, j and k (now exclusions f, g and h). The remaining exclusions to which it did not apply were not superceded; i.e., now exclusions a (loss to electrical devices), b (industrial smoke), c (contents windstorm losses), d (theft), e (mechanical breakdown), i (flood and surface water), j (freeze), and k (landslide or earthquake). In other words, if a peril excluded by paragraphs f (wear and tear, inherent vice, deterioration, rust, rot, mold, dampness, contamination), g (animals kept by the insured), or h (foundation movement) causes water damage, then the water damage ensuing from the excluded peril is covered "if the loss would be otherwise covered under this policy" (i.e., if the loss is not excluded in some other way by some other exclusions other than f, g and h). Because no change in coverage was intended by the 1990 revisions, that same analysis should hold true today. *Balandran,* 972 S.W.2d at 741–42.

### III

In conclusion, I would answer the question posed by the Fifth Circuit Court of Appeals, yes, because the ensuing-loss clause may reasonably be read as an exception to the mold exclusion. The Fifth Circuit offered the following practical application of the provision which I think is correct as I have modified it below:

An example of the practical application of this "preceding cause-proximate cause-ensuing loss" formulation is as fol-

---

4. At the time of these revisions, State Farm apparently acknowledged that a covered water damage claim included mold: "State Farm agrees to extend the coverage for water damage in the same manner as provided in the HO–B.... Specifically, State Farm extends coverage for reasonable and necessary repair or replacement of property physically damaged by a covered water loss which damage shall include mold." Tex. Dep't of Ins., *Official Order No.* 02–0208, at 10–11; *see also* Tex. Dep't of Ins., *Comm'rs Order No.* 01–1105 (Adoption Order dated November 28, 2001; Docket No. 26, p. 191–189.)

lows: Rust, an excluded form of damage, causes a pipe to burst. The damage to the pipe is clearly excluded under the policy exclusion for rust. However, any damage resulting or ensuing from the water that escapes as a result of the rust will be covered under the ensuing-loss provision [so long as the loss is not excluded by some other provision of the policy other than an exclusion with an ensuing-loss provision; i.e., paragraphs f, g, and h]. Plugging these facts into the formulation results in the following: the rust eating through the pipe constitutes the preceding cause; the water escaping from the pipe constitutes the proximate cause; and the damage caused by the escaping water constitutes the ensuing loss.

392 F.3d at 810 n. 30 (as modified). In other words, the Texas Standard HO–B policy provides coverage for losses, including mold, caused by water damage ensuing from any of the perils listed in paragraphs 1.f, 1.g, or 1.h, so long as such damage is not excluded by some other provision of the policy besides these three paragraphs. Because the Court concludes that this is not a reasonable alternative interpretation of the ensuing-loss provision and that the provision is therefore not ambiguous, I respectfully dissent.

