# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-13-00358-CV

---

**AEP Texas Commercial & Industrial Retail Limited Partnership, Appellant**

v.

**Public Utility Commission of Texas; Alliance for Retail Markets;
Texas Energy Association for Marketers; CPL Retail Energy, LP; WTU Retail Energy, LP;
and Direct Energy Business, LLC, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-12-003944, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

---

## DISSENTING OPINION

The portions of Chapter 39 of the Utilities Code and its related rules at issue in this case are unambiguous. The Public Utility Commission (PUC or the Commission) has failed to provide a reasonable alternative construction of the statutes and rules at issue to create ambiguity. Because the Court has deferred to the PUC in the face of unambiguous statutes and rules, I dissent.

The majority has provided a thorough discussion of the underlying dispute and the historical backdrop for the issue presented. I will not attempt to replow that ground here. The majority also sustained AEP's first appellate issue, and I agree with its analysis in that regard. However, the majority nevertheless upheld the PUC's decision and overruled AEP's second appellate issue. It is at that point of the majority's analysis where my view of the case diverges.

As the majority correctly points out, the sole ground for PUC's denial of AEP REP's application was its Conclusion of Law 10, which stated:

> The sharing of the AEP acronym and AEP's red parallelogram logo by both AEP Retail Energy and its affiliated TDUs as described in this case violates the prohibition in PURA § 39.157(d)(6) [and] P.U.C. Subst. R. 25.272(h)(2) of joint advertising and promotional activities that favors a competitive affiliate.

The PUC made no finding or conclusion with regard to whether AEP REP's application ran afoul of any other prohibition or requirement under other statutes or rules.

Thus, we must examine whether the PUC's sole stated ground for ruling against AEP REP is consistent with the language of the statute and rule it cited in its conclusions. In doing so, we cannot consider whether the PUC's position in its brief—its litigation position—is a reasonable interpretation of the statutes and rules that should be afforded deference; rather, we must focus solely on the actual conclusion of the PUC in its final order, as well as the language of the statutes and rules relied upon by the PUC and its interpretation of them in the administrative proceedings below. *See Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624-25 (Tex. 2011) (noting that "formal" agency interpretations are entitled to "serious consideration"); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (noting that deference to agency interpretations applies "to formal opinions adopted after formal proceedings").

According to the parties' briefing, there are two statutes directly in play here, Sections 39.157(d)(5)(B) and 39.157(d)(6), as well as the corresponding rules, found in Rules 25.272(h)(1), (2). The PUC incorrectly concluded that Section 39.157(d)(5)(B) and Rule 25.272(h)(1), the only provisions that directly relate to the sharing of a name or logo by a utility and its competitive

2

affiliate, are inapplicable.[1] The majority correctly concluded that the PUC's interpretation of this statute and the corresponding rule—to the extent the PUC asserts that Section 39.157(d)(5)(B) expired in its entirety in 2005—was unreasonable. Nothing in this Section and the corresponding Rule suggests, even remotely, that there is anything wrong with the logo-sharing AEP REP requests. I also agree with the majority that this conclusion does not necessarily end the inquiry because there could be other bases within Section 39.157(d) or the corresponding rules that support the Commission's decision.[2] Unlike the majority, however, I conclude that there are no other such bases.

---

[1] Section 39.157(d)(5)(B) provides, in relevant part, that a utility cannot:

(B)     allow a competitive affiliate, before September 1, 2005, to use the utility's corporate name, trademark, brand, or logo unless the competitive affiliate includes on employee business cards and in its advertisements of specific services to existing or potential residential or small commercial customers locating within the utility's certificated services a disclaimer . . . .

Tex. Util. Code § 39.157(d)(5)(B). Similarly, Rule 25.272(h)(1) states that:

(1)     Utility or logo. Before September 1, 2005, a utility shall not allow the use of its corporate name, trademark, brand, or logo by a competitive affiliate, on employee business cards or in any written or auditory advertisements of specific services . . . .

16 Tex. Admin. Code §25.272(h)(1) (Pub. Util. Comm'n, Code of Conduct for Electric Utilities and Their Affiliates).

[2] While the majority's conclusion concerning the PUC's unreasonable interpretation of this statute and corresponding rule should not end the inquiry, the PUC's flawed interpretation of the statute and its own rule—again, the only statute and rule directly applicable to use of shared logos by utilities and their competitive affiliates—should not be discarded completely because it underscores the Commission's flawed analytical framework for addressing this issue generally.

3

Section 39.157(d)(6) is a legislative enactment instructing the Commission to adopt a rule to ensure that "a utility does not conduct joint advertising or promotional activities with a competitive affiliate in a manner that favors the competitive affiliate." *See* Tex. Util. Code § 39.157(d)(6). AEP REP is a competitive affiliate of AEP TDU, the utility. The plain language of this statute instructs the Commission to promulgate rules that do not allow utilities, like AEP TDU, to conduct joint advertising or promotional activities with their competitive affiliates, like AEP REP, that favor the competitive affiliate.

The Commission drafted corresponding rules as instructed by the Legislature, in Rule 25.272(h)(2)(A) and Rule 25.272(h)(2)(B). Rule 25.272(h)(2)(A) specifies certain conduct that is considered joint marketing, advertising, or promotional activities and is expressly prohibited. Under this Rule:

(A)     A utility shall not:

> (i)      provide or acquire leads on behalf of its competitive affiliates;
>
> (ii)     solicit business or acquire information on behalf of its competitive affiliates;
>
> (iii)    give the appearance of speaking or acting on behalf of any of its competitive affiliates;
>
> (iv)    share market analysis reports or other types of proprietary or non-publicly available reports, including, but not limited to, market forecast, planning, or strategic reports, with its competitive affiliates;
>
> (v)     represent to customers or potential customers that it can offer competitive retail services bundled with its tariffed services; or
>
> (vi)    request authorization from its customers to pass on information exclusively to its competitive affiliate.

16 Tex. Admin. Code § 25.272(h)(2)(A) (2013) (Pub. Util. Comm'n, Code of Conduct for Electric Utilities and Their Affiliates).

4

The Commission also promulgated Rule 25.272(h)(2)(B), which is the rule on which the Commission's sole conclusion in this case was based. This Rule provides:

> (B)   A utility shall not engage in joint marketing, advertising, or promotional activities of its products or services with those of a competitive affiliate in a manner that favors the affiliate. Such joint marketing, advertising, or promotional activities include, but are not limited to, the following activities:
>
> (i)   acting or appearing to act on behalf of a competitive affiliate in any communications and contacts with any existing or potential customers;
>
> (ii)   joint sales calls;
>
> (iii)   joint proposals, either as requests for proposals or responses to requests for proposals;
>
> (iv)   joint promotional communications or correspondence, except that a utility may allow a competitive affiliate access to customer bill advertising inserts according to the terms of a commission-approved tariff so long as access to such inserts is made available on the same terms and conditions to non-affiliates offering similar services as the competitive affiliate that uses bill inserts;
>
> (v)   joint presentations at trade shows, conferences, or other marketing events within the State of Texas; and
>
> (vi)   providing links from a utility's Internet web site to a competitive affiliate's Internet web site.

16 Tex. Admin. Code § 25.272(h)(2)(B) (2013) (Pub. Util. Comm'n, Code of Conduct for Electric Utilities and Their Affiliates).

The parties do not dispute, nor does the majority hold, that AEP REP's application was rejected under any of the enumerated examples of "joint marketing, advertising, or promotional activities" contained in Rules 25.272(h)(2)(A) or (h)(2)(B). That means that none of the examples provided by the Commission anywhere in its rules—in all of Section 25.272—apply to demonstrate that AEP REP's requested use of the logo was prohibited.[3]

---

[3] And, as the majority correctly held, Section 39.157(d)(5)(B) and Rule 25.272(h)(1) do not prohibit AEP REP's request.

5

Our analysis of these examples, however, cannot and should not end there. The examples the Commission provided are instructive because they show the type of conduct the PUC intended to specifically prohibit. Each example requires proof of actions by the utility itself or certain joint activities between the utility and the competitive affiliate. For example, the utility cannot (1) provide or acquire leads for its competitive affiliate; (2) solicit business or acquire information for its competitive affiliate; (3) represent to customers or potential customers that it can bundle its tariffed services with competitive retail services; (4) act or appear to act on behalf of a competitive affiliate; or (5) provide links on its website to a competitive affiliate's website. *See id*. § 25.272(h)(2)(A)(i), (ii), (v), (B)(i), (vi). Each of these examples—and there are others in the rules—requires some sort of affirmative act *by the utility* on the competitive affiliate's behalf.

There are also four examples provided by the Commission of prohibited "joint marketing, advertising, or promotional activities": (1) joint sales calls; (2) joint proposals; (3) joint promotional communications or correspondence (with an exception not applicable here); and (4) joint presentations at trade shows, conferences, or other marketing events in Texas. *See id*. § 25.272(h)(2)(B)(ii)-(v). Each of these examples—the only specific examples of joint conduct found under Section 25.272(h)(2)(B)—contemplates dual actions by the utility and the competitive affiliate. To make "joint sales calls," representatives of the utility and its competitive affiliate would have to make the calls together or as a joint effort. To make "joint proposals," there would presumably have to be proof that the utility and the competitive affiliate worked on the proposals together. For "joint promotional communications or correspondence" to occur, presumably the utility and the competitive affiliate would have to make the communications or correspondence

6

together as a joint effort.  And, finally, to make "joint presentations at trade shows, conferences, or other marketing events," presumably representatives of the utility and the competitive affiliate would have to work together to make the presentations or events occur.  The examples of prohibited conduct that the Commission itself provided require either specific unilateral actions by the utility or joint actions between the utility and the competitive affiliate.

Yet, in this case, the Commission ignored the Rule's specificity and requirement of joint actions in interpreting Rule 25.272(h)(2), the rule upon which the Commission expressly relied.  Before providing specific examples, Rule 25.272(h)(2)(B) prohibits a utility generally from engaging in "joint marketing, advertising, or promotional activities of its products or services with those of a competitive affiliate in a manner that favors the competitive affiliate." *See id*. § 25.272(h)(2)(B).  This Rule by its very language requires the same type of joint efforts specified in the Commission's own specific examples of what constitutes prohibited conduct.  There is no evidence that AEP TDU and AEP REP actively engaged in such joint efforts here; in fact, the record is devoid of evidence of action by AEP TDU at all in this regard.  Nevertheless, even if there were evidence of such joint efforts, the Commission's interpretation of this Rule ignores and gives no effect to the next phrase of the Rule, a phrase specifically added by the Commission and which does not appear in the corresponding statute.

The Rule prohibits only joint marketing, advertising, or promotional activities by the utility of "*its* products or services *with those* of a competitive affiliate." *See id*. (emphasis added).  The Commission's interpretation gives no effect to this language.  There is no evidence in the record indicating that AEP TDU was involved in prohibited joint advertising of *AEP TDU's* own

7

products or services *with those of* AEP REP. Based on this unambiguous language alone, Rule 25.272(h)(2)(B) does not apply to the situation at hand, and the Commission's conclusion to the contrary is not reasonable.[4]

Instead of giving any weight to the plain language of the rule, the Commission, as well as the majority, focuses unduly on evidence of potential customer confusion if AEP REP's application were granted. The problem with this focus is that it is placed on a factor not present anywhere in Section 39.157(d)(6) or Rule 25.272(h)(2)(B), the only statute and rule on which the Commission based its ruling. In fact, the only place potential consumer confusion can even indirectly be found as an informing factor is in Rule 25.107(e)(1)(B)'s prohibition of deceptive, misleading, or vague business names.[5] The Commission, however, made no findings or conclusions that AEP REP's request was deceptive, misleading, or vague. To the extent Rule 25.107 played a role in the Commission's decision, it was solely because the Commission considered the application "otherwise contrary to § 25.272 of this title," the Code of Conduct.[6] *See* 16 Tex. Admin. Code § 25.107(e)(1)(B) (2013) (Pub. Util. Comm'n, Certification of Retail Electric Providers). Ultimately,

---

[4] Interestingly, in its final order, the Commission omits this particular phrase from its near-quotation of the rule in its Conclusion of Law 10.

[5] This assumes that evidence of potential customer confusion is enough to support a finding that a business name is "deceptive," "misleading," or "vague," an issue we need not reach here.

[6] Rule 25.107(e)(1)(B) states:

Business names shall not be deceptive, misleading, vague, or otherwise contrary to § 25.272 of this title . . . or duplicative of a name previously approved for use by a REP certificate holder.

16 Tex. Admin. Code § 25.107(e)(1)(B) (2013) (Pub. Util. Comm'n, Certification of Retail Electric Providers).

the Commission's sole basis was its flawed interpretation of the unambiguous language of Section 39.157(d)(6) and Rule 25.272(h)(2)(B).

As a Court, we must take statutes as we find them and interpret them as written. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We must also apply Commission rules based on their plain language and cannot allow an agency to contravene the plain language of a rule, regardless of the latitude it normally enjoys in its regulatory function. *Oncor Elec. Delivery Co. v. Public Util. Comm'n of Tex.*, 406 S.W.3d 253, 270 (Tex. App.—Austin 2013, no pet.) (explaining that courts will give some deference to agency's interpretation of rule, so long as the rule is ambiguous and agency's interpretation is reasonable and does not contradict rule's plain language). Here, the statutes at issue, as well as the Commission's rules promulgated under those statutes, are unambiguous. We are therefore duty-bound to apply them as written and not to defer to a Commission interpretation that is inconsistent with their plain language.

The majority incorrectly deferred to the Commission's unreasonable interpretation of an unambiguous statute and rule. As a result, I dissent and would reverse the Commission's final order and remand AEP REP's application to the agency for further proceedings.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Filed: July 17, 2014

9