**GLOBAL PIPELINES PLUS, INC.**

v.

**JOHN E. CHANCE & ASSOCIATES, INC.**

Civ. A. No. 94–1124.

United States District Court, E.D. Louisiana.

Nov. 23, 1994.

Gerard T. Gelpi and G. Beauregard Gelpi, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, LA, for plaintiff.

John Thomas Nesser, III and Elizabeth S. Wheeler, Nesser, King & LeBlanc, New Orleans, LA, for defendant.

CHARLES SCHWARTZ, Jr., District Judge.

Before the Court is defendant, John E. Chance & Associates, Inc.'s ("Chance's") Motion for Partial Summary Judgment filed pursuant to FRCP Rule 56, seeking dismissal of plaintiff, Global Pipelines Plus Inc. ("Plus' ") claims insofar as they relate to any duty or obligation on the part of Chance to provide insurance coverages to Chance under the Plus Contract which is the subject of the captioned proceedings.[1] Plus timely filed formal opposition to Chance's motion and the matter was deemed submitted on the briefs, the Court, having first determined that oral argument would not aid it in the disposition of this matter.

BACKGROUND:

This litigation arises out of the February 28, 1989 rupture of a pipeline owned and operated by Southern Natural Gas Company, when the D/B Cherokee, then operated by Plus' predecessor Pipe Lines Unlimited Services, became snagged on a two inch bypass valve of the aforesaid underwater pipeline. As to Chance, plaintiff Plus alleges, *inter alia*, that Chance breached the Master Service Contract ("Plus Contract") in effect between them—that is, Chance allegedly failed to procure at its own cost and expense certain insurance coverages as required by the Plus Contract.

It is undisputed that on or about July 14, 1988, Chance and Plus entered into a Master Service Agreement ("Plus Contract").[2] The pertinent insurance clauses in the Plus Contract unambiguously and quite specifically detail insurance coverages Chance is required to procure in favor of Plus, to wit:

8. The CONTRACTOR [Chance] will procure at its own cost and expense, including the cost of all deductibles, and continuously maintain in force, insurance in accordance with the COMPANY's [Plus'] Minimum Insurance requirements, and this Article 8. The CONTRACTOR will, at the commencement of this agreement, furnish COMPANY a certificate evidencing all policies and endorsements required to be obtained by CONTRACTOR under this Article 8 and the Minimum Insurance Requirements provision and if requested by COMPANY, to furnish certified copies of all such insurance policies.

\*    \*    \*    \*    \*    \*

B. Each insurance policy required hereunder shall be endorsed to the name of COMPANY [Plus] as an additional insured with no obligation to pay premiums or deductibles. Said policies shall be primary under any insurances that may be maintained by COMPANY. No "other insurance" provision shall be applicable to COMPANY, its affiliated and subsidiary companies or their underwriters by virtue of having been named an additional insured under this policy.

C. Each insurance policy required hereunder shall provide for the waiver of subrogation in favor of COMPANY and COMPANY, its affiliated and subsidiary companies.

\*    \*    \*    \*    \*    \*

E. Minimum Insurance Requirements:

All such insurance shall be carried in a company or companies acceptable to COMPANY and shall be maintained in full force and effect during the term of any work performed under the terms of this Contract and work orders, invoices or statements issued pursuant hereto, and such insurance shall not be canceled, altered or amended without thirty (30) days prior written notice having been furnished to COMPANY.

\*    \*    \*    \*    \*    \*

---

1. Plus is pursuing several theories of liability against Chance including, maritime tort, breach of contract based upon negligent performance under the Plus Contract, and breach of contract based upon failure to provide certain insurance coverages allegedly required by the Plus Contract. The instant motion for partial summary judgment only seeks dismissal of claims of breach insofar as they relate to failure to procure certain insurance coverages.

2. See Attachment to Defendant's Exhibit "A."

(4) Comprehensive General Liability Insurance, with the "watercraft exclusion" deleted, with minimum limits of One Million Dollars ($1,000,000) for any one accident and One Million Dollars ($1,000,000) for property damage, and shall include coverage for obligations and liabilities assumed and undertaken by CONTRACTOR under this General Time Charter Agreement.

It is further undisputed that on or about July 25, 1988, Chance's insurance broker, Adams & Porter, issued a Certificate of Insurance to Plus. (Defendant's Exhibit C). Such certificate confirmed that Chance provided Plus with a Comprehensive General Liability Policy underwritten by Underwriters at Lloyds ("Underwriters") with one million dollar limits of liability covering contractual liability, property damage, and watercraft. It further certified that the policies/coverages procured by Chance in favor of Plus had been endorsed (1) to waive any and all rights of subrogation; and (2) to name Plus, its affiliates and subsidiary companies as additional assureds with no obligation to pay premiums, deductibles or liability for expenditures under any claim. Finally the certificate confirmed that the CGL policy procured by Chance in favor Plus provides that whenever any of the properties and/or liabilities at the time of loss is covered by that policy whether or not coverage is effected by other insurance, such CGL policy shall be considered primary, and in case of any loss, the limits of liability stipulated therein shall be exhausted prior to any other insurance participation.

Underwriters has notified the parties that it is denying coverage for the loss which is the subject of the instant lawsuit based upon the Professional Liability Exclusion which is standard in CGL policies. The exclusion reads as follows:

### EXCLUSION

### (ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY)

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the rendering of or the failure to render any professional services by or for the Named Insured, including:

(1) the preparation or approval of maps, plans, opinions, reports, designs or specifications and

(2) supervisory, inspection or engineering services.

(CGL policy No. 28/9455/8/040, p. 17 and p. 1 of the Broad Form CGL Endorsement, Defendant's Exhibit E).

There is no question but that Chance fulfilled to the letter the requirements to provide coverage imposed by the Plus Contract. Both the watercraft exclusion and the professional liability exclusion were standard in CGL policies at the time the subject CGL policy was issued.[3] Plus has submitted no countervailing affidavit to the effect that the subject professional liability exclusion was or is not standard in CGL policies. By its terms, the Plus Contract required only the deletion of the standard watercraft exclusion in the CGL policy.

The Plus Contract provided that Plus could request a certified copy of all insurance policies procured on its behalf by Chance. However, at no time prior to the incident in question did Plus exercise its right to do so.

Plus argues, *inter alia*, that the extent of its knowledge of the terms of the CGL policy obtained by Chance is a question of fact which requires denial of the motion for partial summary judgment. Plus then argues that its master service agreement is ambiguous and thus, interpretation of the insurance obligations requires extrinsic evidence of the parties intent. Finally, Plus submits that the modifying language used in the Plus Contract (i.e., "under this General Time Charter Agreement") was included in error.

Chance addressed the aforesaid contentions by pointing out that the plain unambiguous terms of the Plus Contract requires only that it only provide a narrow scope of insurance coverage in favor of Plus. The Court agrees and also notes that Plus admitted that there was no contractual indemnity obligation. The contract does not expressly provide that Chance was to insure Plus for

---

**3.** See, Affidavit of Jerry F. Treadwell (Defendant's Exhibit F).

*all* obligations and liabilities assumed and/or undertaken by Chance. Rather, the phrase "under this General Time Charter Agreement" clearly limits those instances where Chance owes an insurance obligation, without exception, to occasions when Chance supplies a vessel. This Court agrees with defendant's contentions for reason that it does not appear from the plain wording of the Plus Contract that Chance had a contractual obligation to provide coverage without limitation, exception, or exclusions. In this case, it is apparent that Plus chose to require deletion of only one of many standard CGL policy exclusions (i.e., the watercraft exclusion). Moreover, taking into account that coverage for watercraft refers to instances where Chance supplies a vessel, the meaning phrase "under this Time Charter Agreement" is plain, and leads to but one reasonable conclusion, to wit: When the scope of Chance's work does not include providing a vessel, the standard CGL policy, with the standard limitations, minus the watercraft exclusion, was the type of insurance coverage that Chance was obligated to provide.

ANALYSIS:

While independent research by the Court has revealed no jurisprudence precisely on point, the Court finds the case cited by Chance, *Landry v. Oceanic Contractors, Inc.,* 731 F.2d 299 (5th Cir.1984), both instructive and germane. The *Landry* case involved a seaman's suit for personal injury against his employer, Oceanic, and Tidex, the operator of the vessel upon which the accident occurred. Tidex operated the vessel in question pursuant to an operating agreement with Oceanic. The terms of the agreement required that Tidex procure a P & I policy with limits of $1,000,000 and naming Oceanic as an additional insured. Tidex procured such a policy with Pentel Insurance Company.

At trial, Oceanic sought coverage for its independent negligence, and the Pentel policy afforded no coverage for independent negligence of additional assureds. The Court found no breach of the operating agreement on the basis of Tidex's failure to procure such coverage, and explained:

> Oceanic argues that the failure of coverage under the policy is breach of the Operating Agreement. As we stated above, the Operating Agreement provides that Tidex must procure and maintain "Protection and Indemnity Insurance in the amount of $1,000,000.00 on the Ocean P & I Clauses SP–23 Form (or substantially equivalent form)." This it did. The Operating Agreement does not require Tidex to "provide insurance without limitation and without exceptions to coverage." *Id.* at 304.

The Court buttressed its conclusion stating:

> If Oceanic was not satisfied with the provisions of the policy, it had ample opportunity to negotiate modifications.... The Agreement provides that Tidex keep the *original* policy document, but does not prevent Oceanic from keeping *copies* of the policies of insurance obtained by Tidex. *Id.*

In the case at bar the Plus Contract provides that Chance must procure and maintain "Comprehensive General Liability insurance, with the "watercraft exclusion" deleted, with minimum limits of One Million Dollars ... and shall include coverage for the obligations and liabilities assumed and undertaken by CONTRACTOR [Chance] under this General Time Charter Agreement." Borrowing language from the *Landry* decision, this it did. Moreover, Plus had ample opportunity to negotiate any modifications to the insurance procured, however, it failed to exercise its option to require Chance to provide it with a certified copy of the policy in question upon receipt of the certificate of insurance detailing coverages provided.

The Court further finds the fact that the *Landry* decision centers around an obligation to provide P & I coverage and that the instant case involves an obligation to provide CGL coverage is a distinction without a difference. Here, as in *Landry,* the Chance provided the insurance coverage specifically required by the Master Service Contract.

Where as here the contractual language is clear on its face it should be given its plain and ordinary meaning, and the legal of effect of such language is a question of law. Chance did not provide a vessel for the particular job in question, and consequently no General Time Charter Agreement was con-

templated. Thus, the only relevant requirement was that Chance provide CGL coverage with the watercraft exclusion deleted, which it did. There being no material issue of fact in dispute as to the issue of breach of the Plus Agreement regarding procuring CGL coverage, Chance is entitled to summary judgment pursuant to FRCP Rule 56 dismissing Plus' claim for breach of insurance obligation of the operative Master Service Contract. Accordingly,

IT IS ORDERED that defendant's Motion for Partial Summary Judgment is GRANTED dismissing plaintiff's claims against it for breach of insurance obligations owed under the Master Service Contract.