COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-448-CV

BELL HELICOPTER TEXTRON INC. APPELLANT

V.

GLOBAL TECHNICAL SERVICES, INC. APPELLEE

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is a breach of contract case involving competing motions for summary judgment.  Because we hold that the trial court correctly denied the motion for partial summary judgment filed by Appellant Bell Helicopter Textron Inc. (“Bell”) and correctly granted the motion for summary judgment filed by Appellee Global Technical Services, Inc. (“Global”), we will affirm the trial court’s judgment.

I.  Facts and Procedural History

Global provides temporary contract labor to customers.  Global executed a Basic Ordering Agreement (“BOA”) with Textron Inc., Bell’s parent company, to provide technical labor for Bell.  The BOA required Global to provide commercial general liability (“CGL”) insurance naming Bell as an additional insured.  Specifically, the BOA contained the following provision:

12.02 
Insurance
.  
[Global] shall maintain and keep in force . . . the

 following minimum insurance coverage and limits . . . .

. . . .

(b) Commercial General Liability Insurance (including blanket contractual liability and broad form property damage) with Products Liability/Completed Operations coverage with minimum combined single limit per occurrence of $5,000,000.

To satisfy this contractual obligation, Global obtained a CGL policy issued by National Union Fire Insurance Company (“National Union”) for the period from October 1, 2002, to October 1, 2003.  The CGL policy that National Union issued contained an endorsements section, which clearly indicated that certain listed and attached endorsements were a part of the policy on its effective date, including an endorsement identified as AV207.  Endorsement AV207 was titled “Exclusion - Advertising Injury,” and it essentially replaced the previous “personal and advertising injury liability” coverage with “personal injury liability” coverage alone.  The effect of endorsement AV207 was to delete the “advertising injury” coverage from the CGL policy.  It is undisputed that the CGL policy issued by National Union did not provide coverage for advertising injury. 

A.  The Underlying Suit

As part of its agreement to provide Bell with temporary contract labor, Global sent Wayne Fowler to work at Bell, where he worked on projects related to Bell’s V-22 Osprey aircraft.  In 2003, Fowler sued Bell for copyright infringement, among other claims, alleging that Bell had unlawfully copied Fowler’s software “in the course of advertising its V22 Osprey Aircraft and its maintenance and support services . . . .”
(footnote: 2)  

After being served with Fowler’s suit, Bell requested indemnity and defense from National Union.  National Union denied Bell’s claim.  National Union’s letter to Bell denying the claim stated that “the lawsuit is essentially a copyright infringement lawsuit,” and although such a claim would be covered under “a traditional CGL policy,” in this case Global’s policy specifically excluded coverage for any “advertising injury.” 

  
 B.  The Suit at Hand

Bell sued Global for breach of contract and subsequently filed a motion for partial summary judgment on the issue of whether the CGL policy Global acquired for Bell from National Union satisfied the BOA’s contractual requirement that Global provide “Commercial General Liability Insurance.”   Global also filed for summary judgment, claiming that (1) Global had no duty to defend or to indemnify Bell for Fowler’s claims in the underlying suit because Fowler’s claims were “advertising injury” claims that were not covered under the National Union CGL policy and (2) the BOA only required Global to obtain CGL insurance and to name Bell as an additional insured; it did not require or specify that Global was to obtain advertising injury coverage.  The trial court granted Global’s motion and denied Bell’s motion.  This appeal followed.  In two issues, Bell argues that as a matter of law the term “Commercial General Liability Insurance” contemplates advertising injury coverage and that Global’s failure to purchase a CGL policy that included advertising injury coverage constituted a breach of the BOA. 

II.  Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).
  
When a trial court’s order granting summary judgment does not specify the ground or grounds relied on for its ruling, the summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious.  
Provident Life & Accident Ins. Co. v. Knott
, 128 S.W.3d 211, 216 (Tex. 2003); 
Star-Telegram, Inc. v. Doe
, 915 S.W.2d 471, 473 (Tex. 1995).

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  The summary judgment will be affirmed only if the record establishes that the movant conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004).
  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).
  When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872 (Tex. 2000).  
The reviewing court should render the judgment that the trial court should have rendered.  
Id.
  

III.  Granting Global’s Motion for Summary Judgment

Bell argues that the trial court erred by granting Global’s motion for summary judgment and by denying its own motion for partial summary judgment.  The crux of Bell’s argument is that as a matter of law the term “Commercial General Liability Insurance” encompasses four basic types of coverages: (1) bodily injury coverage; (2) property damage coverage; (3) personal injury coverage; and (4) advertising injury coverage.  Accordingly, Bell argues that because the BOA required Global to provide CGL insurance, it necessarily required Global to purchase a policy that included these four basic CGL coverages, including advertising injury coverage.  Bell contends that Global breached the BOA when it obtained a CGL policy that excluded advertising injury coverage and that therefore the trial court erred by granting summary judgment for Global.
(footnote: 3)
 A.  The Bell-Global Contract

In early 2001, Bell held a meeting soliciting bids for a new labor contract.  After attending the meeting and considering the potential contract, Global submitted the winning bid.  After winning the bid, Global negotiated only the price and payment with Bell.  The parties did not negotiate Global’s obligations in defending lawsuits, obtaining insurance, or any other matter.  Bell presented Global with a BOA that is almost identical to the version that the parties ultimately signed.
(footnote: 4)  Accordingly, the terms and provisions in the BOA are those created and incorporated exclusively by Bell.

Only one provision of the BOA referred to insurance.  As set forth previously, the express terms of that provision required Global to provide “Commercial General Liability Insurance (including blanket contractual liability and broad form property damage) with Products Liability/Completed Operations coverage.”  In the trial court, Bell provided expert affidavits in an attempt to conclusively establish that the term “Commercial General Liability” necessarily includes advertising injury coverage.  Bell encourages this court to so hold.

1.  The BOA is Unambiguous

The question of whether a contract is ambiguous is one of law for the court.  
J.M. Davidson, Inc. v. Webster
, 128 S.W.3d 223, 229 (Tex. 2003).  We determine whether the contract is ambiguous by looking at the contract as a whole in light of the circumstances present when the parties entered it.  
Universal Health Servs., Inc. v. Renaissance Women’s Group, P.A.
, 121 S.W.3d 742, 746 (Tex. 2003).  
An ambiguity exists when, after application of the canons of contract interpretation, the language remains reasonably susceptible to more than one reasonable interpretation.  
See Burlington N. &
 
Santa Fe Ry. Co. v. S. Plains Switching, Ltd., 
174 S.W.3d 348, 356 (Tex. App.—Fort Worth 2005, no pet.).  An ambiguity does not exist merely because the parties advance differing interpretations.  
See Fiess v. State Farm Lloyds
, 202 S.W.3d 744, 746 (Tex. 2006).
 
 But when the words of a contract may be given a definite meaning according to a canon of contract interpretation, there is no ambiguity and the court will construe the language as a matter of law.  
SAS Institute, Inc. v. Breitenfeld
, 167 S.W.3d 840, 841 (Tex. 2005).  

One common law canon of contract interpretation dictates that when choosing between different meanings advanced by both parties, we must construe the contract most strictly against the party that supplied the terms.  
See Mastrobuono v. Shearson Lehman Hutton, Inc.
, 514 U.S. 52, 62-63, 115 S. Ct. 1212, 1219 (1995); 
ASI Tech., Inc. v. Johnson Equip. Co.
, 75 S.W.3d 545, 548 (Tex. App.—San Antonio 2002, no pet.).  

Bell contends that a national standard indicates that the term “Commercial General Liability Insurance,” as used in the BOA, necessarily includes advertising injury coverage.  In contrast to Bell’s interpretation, Global contends that the term “Commercial General Liability Insurance” should be given its plain meaning  because the face of the BOA did not define the term or describe the insurance required other than as “Commercial General Liability Insurance (including blanket contractual liability and broad form property damage) with Products Liability/Completed Operations coverage.”  Because Bell supplied the BOA’s terms in the present case, we must construe the meaning of its terms most strictly against Bell.  
See Mastrobuono
, 514 U.S. at 62-63
, 
115 S. Ct. at 1219; 
ASI Tech., Inc.
, 75 S.W.3d at 548. 

After applying this canon of contract interpretation, it is clear that the term “Commercial General Liability Insurance” as used in the BOA is not reasonably susceptible to more than one reasonable interpretation.  
See Burlington N. & Santa Fe Ry. Co.
, 174 S.W.3d at 356.  Accordingly, the term as used in the BOA is unambiguous and we will construe the language as a matter of law.
(footnote: 5)  
See Breitenfeld
, 167 S.W.3d at 841.

2.  Parties’ Intent

The objective intent of the parties as expressed in an agreement controls the construction of an unambiguous contract, not a party’s after-the-fact conduct.  
In re Dillard Dep’t Stores, Inc.
, 186 S.W.3d 514, 515 (Tex. 2006) (per curiam); 
see also Matagorda County Hosp. Dist. v. Burwell
, 189 S.W.3d 738, 740 (Tex. 2006) (we are to interpret contracts by ascertaining the true intent of the parties as expressed in the written language of the contract itself).  In ascertaining the true intent of the parties, we look to their objective intent, not their subjective intent.  
See Calpine Producer Serv., L.P. v. Wiser Oil Co.
, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.).  We need not consider “the intention which the parties may have had, but failed to express in the instrument.”  
Republic Nat’l Bank of Dallas v. Nat’l Bankers Life Ins. Co.
, 427 S.W.2d 76, 80 (Tex. Civ. App.—Dallas 1968, writ ref’d n.r.e.).  We must look to the entire contract in an effort to harmonize and give effect to all provisions so that none will be rendered meaningless.  
Mabrey v. SandStream, Inc.
, 124 S.W.3d 302, 314 (Tex. App.—Fort Worth 2003, no pet.).

The BOA’s only provision dealing with CGL insurance, when read together with the entire contract, reveals the intent of the parties.  Bell manifested its intent by requesting “Commercial General Liability Insurance (including blanket contractual liability and broad form property damage) with Products Liability/Completed Operations coverage.”
  Nowhere in the “insurance” provision of the BOA did Bell indicate that the term commercial general liability included advertising injury coverage.  Nowhere in the provision did Bell manifest an intent for Global to procure advertising injury coverage.  In fact, the words “advertising injury” are absent from the BOA altogether.  The only intent manifested by Bell in the BOA’s insurance provision was its intent that the CGL insurance include blanket contractual liability and broad form property damage with Products Liability/Completed Operations coverage. 

If Bell intended, at the time of formulating and executing the BOA, that the term CGL encompass the four basic coverages it now claims are traditionally included in a standard CGL policy, it very well may have simply required “Commercial General Liability Insurance” and nothing more
(footnote: 6) or may have required a “standard” or “traditional” CGL policy.  But Bell explained in the BOA its intent as to the coverage it expected by inserting the parenthetical “(including blanket contractual liability and broad form property damage)” after the term “Commercial General Liability Insurance.”  By this language, Bell specifically requested a CGL policy that included certain coverages—blanket contractual liability and broad form property damage—but made no mention of advertising injury coverage.  

Bell offered expert affidavit testimony that a national customary usage of the term “Commercial General Liability” exists and that this national understanding establishes that CGL coverage encompasses the four identified basic coverages.  But we construe a policy according to what it says, not what any regulators or individual insurers thought it said.  
Fiess
, 202 S.W.3d at 746.
  
Although evidence of this type of custom or usage is generally admissible to help ascertain the parties’ true intent, 
see Mescalero Energy, Inc. v. Underwriters Indem. General Agency, Inc.
, 56 S.W.3d 313, 323 (Tex. App.—Hous. [1st Dist.] 2001, pet. denied), it cannot operate to vary or contradict the terms of a plain and unambiguous contract.  
See Corso v. Carr
, 634 S.W.2d 804, 808 (Tex. App.—Fort Worth 1982, writ ref’d n.r.e.). Accordingly, it is the objective intent of the parties, and not a national standard, that is at issue in this case.  
See Calpine Producer Serv., L.P.
, 169 S.W.3d at 787. To determine the parties’ objective intent, we look to the intention Bell expressed in the contract, not the intention that Bell may have had but failed to express.  
See Republic Nat’l Bank of Dallas
, 427 S.W.2d at 80. 

Bell would have us ignore and hold meaningless the parenthetical that follows the term “Commercial General Liability Insurance” specifically delineating the coverage Bell expects.  This we cannot do; ascertaining the true intent of the parties demands a complete and thorough examination of the entire contract, so we must give meaning to these parenthetical terms in order to harmonize the insurance provision with the contract as a whole.  
See Heritage Res., Inc. v. NationsBank,
 939 S.W.2d 118, 121 (Tex. 1996) (“We presume that the parties to a contract intended every clause to have some effect.”); 
see also Mabrey
, 124 S.W.3d at 314.  Looking to the entire contract and giving meaning to all of its terms in our effort to ascertain the true intent of the parties as expressed in the language of the BOA itself, we hold that the intent of the parties as expressed in the language of the BOA was to require only CGL insurance containing the expressly listed coverages and not “advertising injury” coverage.  
See Matagorda County Hosp. Dist.
, 189 S.W.3d at 740; 
accord Global Pipelines Plus, Inc. v. John E. Chance & Assoc., Inc.
, 870 F.Supp. 711, 714 (E.D. La. 1994) (granting summary judgment for defendant on claim that defendant breached contract between the parties requiring defendant to provide CGL coverage by providing CGL insurance that excluded professional liability coverage).  Therefore, the trial court properly denied Bell’s motion for partial summary judgment.  

B.  Global’s Motion for Summary Judgment

Global asserted three summary judgment grounds to the trial court.  The first two grounds claimed that Global had no duty to defend or indemnify Bell because the claims or causes of action against Bell were outside the scope of Global’s obligation. 
 The third ground claimed that Global could not have breached the BOA because the BOA did not require coverage for advertising injuries.  In its fax ruling granting Global’s motion for summary judgment, the trial court stated, “D. Global Tech M/S/J is granted.”  Because the trial court’s order granting Global’s summary judgment likewise did not specify the ground or grounds relied on for its ruling, we must  affirm the summary judgment on any meritorious theory presented to the trial court.  
See Knott
, 128 S.W.3d at 216; 
Star-Telegram, Inc.
, 915 S.W.2d at 473.  

Having held that the term “Commercial General Liability Insurance” as used in the BOA insurance provision did not, as a matter of law, encompass advertising injury coverage, we further hold that Global conclusively established that it did not breach the BOA as a matter of law.  Because Global conclusively negated an essential element of Bell’s breach of contract claim, Global was entitled to summary judgment on that claim.  
See Mason
, 143 S.W.3d at 798.  We overrule Bell’s two issues on appeal.

IV.  Conclusion

Having held that the term “Commercial General Liability Insurance” did not include advertising injury coverage in the present case, and having overruled Bell’s issues on appeal, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE,C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

DELIVERED: December 14, 2006

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 02-05-448-CV

BELL HELICOPTER TEXTRON INC. APPELLANT

V.

GLOBAL TECHNICAL SERVICES, INC. APPELLEE

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

DISSENTING OPINION

------------

Because I believe that Appellant Bell Helicopter Textron Inc. raised a genuine issue of material fact, I respectfully dissent from the majority's opinion.  I would hold that the trial court erred by granting summary judgment and remand for a trial on the merits. 

LEE ANN DAUPHINOT                JUSTICE

DELIVERED: December 14, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Fowler’s lawsuit was tried in federal district court, and the trial judge granted Bell’s motion for judgment as a matter of law in July 2005.  

3:
Bell raises other alleged breaches of the BOA by Global, but Bell did not plead these breaches in the trial court. 

4:
The only difference between the initial version of the BOA and the signed version is Bell’s inclusion of a provision for a two percent discount it would receive if it paid Global within fifteen days of invoice.  But Bell agreed that Global could strike that provision from the agreement. 

5:
In fact, neither party contends that the BOA is ambiguous.

6:
In fact, because the BOA does not use the term “Commercial General Liability Insurance” as a stand-alone term, the issue of whether that term  standing alone would encompass the four basic coverages propounded by Bell is not before us.  Instead we examine the language of the BOA, and it requires “Commercial General Liability Insurance (including blanket contractual liability and broad form property damage) with Products Liability/Completed Operations coverage,” not simply “Commercial General Liability Insurance.”