TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00787-CV






Jose Luis Garza, individually and d/b/a My Three Daughters Farms and

Blanca C. Garza, individually and d/b/a My Three Daughters Farms, Appellants


v.


Texas Boll Weevil Eradication Foundation, Inc., Appellee






FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. C-1-CV-07-008942, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING






&






NO. 03-11-00788-CV






Jose Luis Saenz, Appellant


v.


Texas Boll Weevil Eradication Foundation, Inc., Appellee






FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. C-1-CV-07-008891, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING






&




NO. 03-11-00789-CV






Armando Gonzalez, Appellant


v.


Texas Boll Weevil Eradication Foundation, Inc., Appellee






FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO., C-1-CV-07-008924, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING






&






NO. 03-11-00790-CV






Eusebio Saenz, Jr., Appellant


v.


Texas Boll Weevil Eradication Foundation, Inc., Appellee






FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. C-1-CV-07-008892, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 Appellants Jose Luis Garza and Blanca C. Garza, individually and d/b/a My Three
Daughters Farms, Jose Luise Saenz, Armando Gonzalez, and Eusebio Saenz, Jr. (collectively,
the "Farmers") were each sued by the Texas Boll Weevil Eradication Foundation, Inc. (the
"Foundation"). The Foundation filed the suits seeking to collect assessments levied against the
Farmers for the year 2006. See Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex.
Gen. Laws 1769, 1776 (amended 2009) (current version at Tex. Agric. Code Ann. § 74.113 (West
Supp. 2011)) (providing that Foundation is responsible for collection of assessments). In response
to the parties' competing motions for summary judgment, the district court granted summary
judgments in favor of the Foundation and denied the Farmers' motions. In these consolidated
appeals, the Farmers contend that the summary judgments should be reversed because the summary
judgment evidence establishes that in 2006 they were not "cotton growers," as defined in section
74.102(5) of the agriculture code, and therefore are not subject to the Foundation's 2006 assessment.
See Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended
2009) (current version at Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011)) (defining "cotton
grower"). Because we agree that undisputed summary-judgment evidence establishes that the Farmers
were not cotton growers in 2006 and are not subject to the 2006 assessment, in each cause we reverse
the trial court's grant of summary judgment and render summary judgment in favor of the Farmers.


BACKGROUND

 Chapter 74 of the Texas Agriculture Code designates the Foundation, a nonprofit
corporation, as the entity charged with planning, carrying out, and operating programs to aid in the
eradication of the boll weevil and the pink bollworm from cotton in Texas, under the supervision of
the Texas Department of Agriculture. See Tex. Agric. Code Ann. § 74.1011 (West 2004). Chapter 74
also establishes the creation of six geographic zones, called "eradication zones," and delegates to the
commissioner of agriculture the authority to designate additional eradication zones, subject to
referendum approval by affected cotton growers in the proposed zone. Id. at §§ 74.1041, .1042
(West 2004). Subject to further referendum approval by the cotton growers in an eradication zone,
the Foundation is authorized to collect assessments levied on cotton growers in that zone. Act of
May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009).
The Foundation calculates and collects the assessments on an annual basis, which are used, in part,
to fund eradication programs. See 4 Tex Admin. Code §§ 3.502 (Tex. Dep't of Agric., Approval of
Assessment Rates and Collection Dates) (upon yearly recommendation of the Foundation, the
commissioner determines the assessment rate and due date for each zone), 3.504 (2012) (Tex.
Dep't of Agric., Payment of Assessments, Incentives for Early Payment; Penalties for Late Payment;
Website) (assessments are due in full by due date set by commissioner each year); see also Act of
May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009).

 In 2006, the Foundation levied assessments against the Farmers, who farm in the
Lower Rio Grande Valley Eradication Zone. When the Farmers failed to pay the assessments, the
Foundation filed four separate but substantively identical suits against the Farmers, seeking to
recover the 2006 assessments. See Tex. Agric. Code Ann. § 74.115 (West 2004). The Foundation
then moved for summary judgment in all four causes. The Farmers responded to each motion for
summary judgment, objecting to the Foundation's summary-judgment evidence and claiming that
the Foundation had failed to establish that the Farmers owe the 2006 assessments because (1) they
are not "cotton growers" as defined by section 74.102(5) of the agriculture code; (2) the assessment
is void because the assessment rate for 2006 was recommended and adopted in violation of the Texas
Open Meetings Act, chapter 551 of the government code; and (3) chapter 74 on its face violates the
Farmers' right to procedural due process under the Texas and federal constitutions and the Open
Courts provision of the Texas Constitution. The Farmers also filed cross-motions for summary
judgments, affirmatively raising these same issues and asserting that they do not owe the
2006 assessments as a matter of law. Upon considering the motions, in each cause the trial court
denied the Farmers' motion for summary judgment and granted the Foundation's motion for
summary judgment. (1)

 These appeals followed. In one issue, the Farmers challenge the trial court's denial
of their summary-judgment motions and the grant of the Foundation's summary-judgment motions.
The Farmers argue that the trial court erred because the undisputed evidence establishes that they are
not "cotton growers," as defined by section 74.102(5) of the agriculture code. (2)

STANDARD OF REVIEW

 Summary judgment is proper if the movant establishes that there are no genuine
issues of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ.
P. 166a(c). A defendant who conclusively negates at least one essential element of a plaintiff's
cause of action is entitled to summary judgment on that claim. IHS Cedars Treatment Ctr. of DeSoto,
Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2003). We review a trial court's rulings on summary
judgments de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex 2005). When,
as in this case, both parties move for summary judgment on the same issues and the trial grants one
motion and denies the other, we will consider the summary-judgment evidence presented by both
sides, determine all questions presented, and if we find that the trial court erred, render the judgment
the trial court should have rendered. Id.

 The Farmers' argument on appeal is primarily based on construction of the Texas
Agricultural Code, specifically the definition of "cotton grower" under chapter 74 of the code.
Statutory construction is a legal question that we review de novo. First Am. Title Ins. Co. v. Combs,
258 S.W.3d 627, 631 (Tex. 2008). When construing a statute, our primary objective is to ascertain
and give effect to the legislature's intent, following first and foremost the plain language of the
statute. Id. at 631-32; GMC v. Bray, 243 S.W.3d 678, 685 (Tex. App.--Austin 2007, no pet.). In
addition, we look to the entire act in determining the legislature's intent with respect to specific
provisions. Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water, 336 S.W.3d 619,
628 (Tex. 2011). We read every word, phrase, and expression in a statute as if it were deliberately
chosen, and we presume that the exclusion of words from the statute is done purposefully. Gables
Realty Ltd. P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex. App.--Austin 2002,
pet. denied). Where the statutory language at issue is ambiguous, its construction by an agency
charged with its enforcement is ordinarily entitled to serious consideration so long as the agency's
construction is reasonable. Texas Citizens, 336 S.W.3d at 625 (citing Fiess v. State Farm Lloyds,
202 S.W.3d 744, 747-48 (Tex. 2006)). Further, in applying this deference, we consider an agency's
"formal opinions adopted after formal proceedings, not isolated comments during a hearing or
opinions [in a court brief]." Id.


DISCUSSION

 Only "cotton growers," as defined by section 74.102(5), are subject to assessments
levied by the Foundation. See Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen.
Laws 1769, 1776 (amended 2009) (providing that commissioner shall propose "maximum assessment
to be paid by cotton growers" and that "foundation may collect the assessment"); see also Tex.
Agric. Code Ann. § 74.115 (providing that "a cotton grower who fails to pay an assessment levied
under this subchapter may be subject . . . to a penalty set by the commissioner"). While section
74.102(5) has been amended several times since its enactment, most recently in 2009, this case
is governed by the version of section 74.102(5) in effect in 2006. (3) Under this version of section
74.102(5), "cotton grower" means:

 a person who grows cotton and receives income from the sale of cotton. The term
includes an individual who as owner, landlord, tenant, or sharecropper is entitled to
share in the cotton grown and available for marketing from a farm or to share in the
proceeds from the sale of the cotton from the farm.


Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended
2009).

 The material facts in this case are undisputed. All of the Farmers planted cotton in
2006; however, as a result of drought, none of the crops succeeded and no cotton was sold on the
market. Instead, the Farmers received crop insurance proceeds for their failed crops. In addition,
some of the Farmers received federal disaster relief payments for 2006. The Farmers argue that,
under these facts and the unambiguous language of the statute, none of them meet the statutory
definition of "cotton grower." Specifically, they argue that in order to be cotton growers they must
(1) grow cotton and (2) receive income from the sale of the cotton. Therefore, because the undisputed
evidence shows that none of the Farmers grew cotton in 2006 or received income from the sale of
cotton in 2006, the Farmers contend that they cannot be considered cotton growers for purposes of
the 2006 assessment.

 The Foundation makes three arguments in response to the Farmers' contention
that they are not cotton growers. First, the Foundation argues that the Farmers are cotton growers
because section 74.102(5) includes "an individual who as owner, landlord, tenant, or sharecropper
is entitled . . . to share in the proceeds from the sale of the cotton from the farm" and "it is
undisputed that the Farmers planted cotton in 2006 and were entitled to share in the proceeds
from the sale of that cotton." See Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex.
Gen. Laws 1769, 1770 (amended 2009). Second, the Foundation argues that the Farmers, with the
exception of Eusebio Saenz, are cotton growers because the evidence shows that the Farmers planted
cotton and received income on the sale of cotton before 2006. Third, the Foundation contends that
because the Farmers planted cotton in 2006 and received income by way of crop insurance proceeds
and government subsidies in 2006 to replace "income from the sale of cotton," they are considered
cotton growers for purposes of the 2006 assessment.


Construction of section 74.102(5)

 We first consider whether the Farmers' proposed construction of section 74.102(5)
is reasonable. The Farmers' argument with regard to the proper construction of section 74.102(5)
is simple. In arguing that they are not cotton growers under the statute, the Farmers focus on the first
sentence of section 74.102(5), which defines "cotton grower" as "a person who grows cotton
and receives income from the sale of cotton." The Farmers argue that unless both prongs of this
definition are met, they cannot be considered cotton growers.

 The language in the first sentence of section 74.102(5) is seemingly straightforward
and, in isolation, its plain meaning is readily apparent--a person is a cotton grower only if he or
she (1) grows cotton and (2) receives income from the sale of cotton. There is no language in this
portion of section 74.102(5) that would suggest that the words chosen by the legislature in this first
sentence mean anything other than their common, ordinary meaning. See Texas Dept. of Transp. v.
City of Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004) ("In discerning [legislative] intent, we begin
with the 'plain and common meaning of the statute's words.'").

 However, when interpreting a statute we do not look to any one phrase, clause or
sentence in isolation, but to the statute as a whole. City of Sunset Valley, 146 S.W.3d at 642. Further,
we must attempt to harmonize the statute's various provisions. Marcus Cable Assocs., L.P. v. Krohn,
90 S.W.3d 697, 706 (Tex. 2002). With these principles of statutory construction in mind, we
consider the Foundation's first argument, urging us to consider the second sentence of section
74.102(5) and conclude that a person may be considered a cotton grower even when there is no
sale of cotton.

 The Foundation argues that even if the Farmers did not "grow[] cotton and receive[]
income from the sale of cotton," the Farmers are nevertheless cotton growers under the second
sentence of section 74.102(5). See Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997
Tex. Gen. Laws 1769, 1770 (amended 2009). The second sentence of section 74.105(5) states that
the term "cotton grower . . . includes an individual who as owner, landlord, tenant, or sharecropper
is entitled . . . to share in the proceeds from the sale of the cotton from the farm." Id. The Foundation
asserts that this language demonstrates the legislature's intent not to limit the definition to individuals
who grow and receive income from the sale of cotton. (4) Therefore, the Foundation argues, the
Farmers are cotton growers because it is undisputed that they planted cotton in 2006 and were
"entitled to share in the proceeds from the sale of that cotton."

 Because the undisputed evidence is that the Farmers did not sell any cotton in 2006,
we take the Foundation's argument to mean that a person is considered a cotton grower under the
statute if he or she, as a result of his or her connection to the land, would be entitled to share in
proceeds, if and when there are any, from the sale of the cotton from the farm, if and when there is
any. In other words, the Foundation argues that an individual may be considered a cotton grower
if they might be entitled to receive proceeds in the future. For the following reasons, we disagree
that the legislature intended to allow the Foundation to levy assessments on individuals who would
be "entitled" to proceeds in the theoretical sense suggested by the Foundation.

 First, we start with the proposition that when construing the second sentence of
section 74.102(5) we must read it together with the first sentence if possible. See Tex. Gov't Code
Ann. § 311.021(2) (West 2005) (it is presumed that entire statute is intended to be effective). Under
the second sentence of section 74.102(5), the definition of cotton grower "includes" individuals who,
by virtue of their connection with the land, are entitled to a share in the proceeds from the sale of the
cotton. See Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770
(amended 2009). The word "includes" is generally a term of enlargement, not of limitation or
exclusive enumeration. Tex. Gov't Code Ann. § 311.005(13) (West 2005). In other words, the list
following the word "includes" is not intended to be exhaustive. See id. Moreover, there is no
indication that the legislature intended to altogether dispense with the specific requirements set forth
in the first sentence of section 74.102(5) that there be cotton grown and that there be income from
the sale of cotton. See City of Waco v. Lopez, 259 S.W.3d 147, 153 (Tex. 2008) (if general provision
conflicts with special provision, provisions shall be construed if possible, so that effect is given to
both). Rather, reasonably construing the statutory definition as a whole, an individual is a "cotton
grower" under the second sentence of section 74.102(5) only when there are proceeds from the actual
sale of cotton grown.

 Second, we note that our construction of the second sentence of section 74.105(5) is
consistent with the rule that courts must not give the words used by the legislature an "exaggerated,
forced, or constrained meaning." See Presidio Indep. Sch. Dist. v. Scott, 309 S.W.3d 927, 931 (Tex.
2010) (quoting City of Austin v. Southwestern Bell Tel. Co., 92 S.W.3d 434, 442 (Tex. 2002)).
In this case, the legislature could have made clear that the definition of cotton grower includes an
individual who would be entitled to a share of the proceeds, if and when there are any, from the
sale of the cotton from the farm, if and when there is any. However, the legislature did not do so,
and we will not presume that the legislature intended to include these words when there is nothing
in the language of the statute indicative of such intent. See Cameron v. Terrell & Garrett, Inc.,
618 S.W.2d 535, 540 (Tex. 1981) ("Only when it is necessary to give effect to the clear legislative
intent can we insert additional words or requirements into a statutory provision."); see Gables Realty
Ltd. P'ship, 81 S.W.3d at 873 (noting that courts should "presume the words excluded from the
statute are done so purposefully").

 Construing the statute as a whole, in a manner that gives effect to each sentence,
clause, phrase, and word to the extent possible, we conclude that a person is a cotton grower under
section 74.102(5) if that person (1) grows cotton and receives income from the sale of cotton, or
(2) is indirectly entitled to share in cotton grown and/or share in proceeds from the sale of cotton,
by virtue of his or her connection with the land. See City of Sunset Valley, 146 S.W.3d at 642 ("If
the statutory language is unambiguous, we interpret it according to its terms, giving meaning to
the language consistent with other provisions in the statute."). However, under either part of this
definition, the plain language of section 74.102(5) indicates that the legislature intended for a person
to be considered a cotton grower only when there is cotton grown and actual income from the
sale of cotton. Because the term "sale" is not defined in chapter 74, we simply apply its plain and
ordinary meaning. See Tex. Gov't Code Ann. § 311.011(a) (West 2005); see also State v. Shumake,
199 S.W.3d 279, 284 (Tex. 2006) ("If the statute is clear and unambiguous, we must apply its words
according to their ordinary meaning."). (5)

 In this case, the undisputed summary-judgment evidence is that all of the Farmers
planted cotton in 2006; however, as a result of drought, none of the crops succeeded and no cotton
was sold. Therefore, under the plain meaning of the statute, the Farmers did not receive "income
from the sale of cotton" in 2006 and thus were not cotton growers under chapter 74. (6)

 While our analysis would appear to end here, the Foundation contends that the
Farmers should nevertheless be considered cotton growers for purposes of the 2006 assessment.
The Foundation argues that the Farmers did, in fact, receive "income from the sale of cotton"
because the Farmers (1) received income from the sale of cotton in previous years and (2) received
income from the sale of cotton in the form of insurance payments and government subsidies in 2006.
We now turn to these remaining arguments.


Income from the sale of cotton in past years

 The Foundation argues that the Farmers, with the exception of Eusebio Saenz, are
cotton growers for purposes of the 2006 assessment because they have grown cotton and received
income on the sale of cotton in previous years. (7) The Foundation explains that the language of section
74.102(5) is not limited to a particular year, and therefore a person is qualified as a "cotton grower"
if he or she has received income from the sale of cotton at any time. See Act of May 29, 1997,
75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). In essence, the
Foundation asserts "once a cotton grower, always a cotton grower." Construing the statute as a whole,
we disagree with the Foundation's proposed construction. See Texas Citizens, 336 S.W.3d at 628.

 Under chapter 74, the commissioner of agriculture proposes, and eligible cotton
growers in each eradication zone approve by referendum, (1) the maximum assessment to be paid
by cotton growers having production in the eradication zone and (2) the time for which any
assessment will be made. Act of May 8, 1995, 74th Leg., R.S., ch. 227, § 9, 1995 Tex. Gen. Laws
1976, 1979 (amended 2009). The commissioner then sets on a zone-by-zone basis the assessment
rate and the date on which assessments are due and payable. Id. The Foundation calculates and
levies the assessments on an annual basis. See id.; see also Tex. Admin. Code §§ 3.502, .504. The
Foundation is also responsible for collecting the assessment as well as preparing and mailing billing
statements to "each cotton grower subject to the assessment." Act of May 8, 1995, 74th Leg., R.S.,
ch. 227, § 9, 1995 Tex. Gen. Laws 1976, 1979 (amended 2009). When a cotton grower fails to pay
an assessment when due, the Foundation may acquire a lien "on cotton produced and harvested that
year from the acreage that is subject to the assessment that is due and unpaid." Tex. Agric. Code
Ann. § 74.115. Examining the statute as a whole, we conclude that the statute may be reasonably
construed as allowing the Foundation to levy an assessment against a person who is a cotton grower
during the assessment year. As a result, the Farmers are subject to the 2006 assessment only if they
were cotton growers in 2006.

 Under the Foundation's proposed interpretation, a person that has grown cotton in
the past but no longer grows cotton, and has no intention of ever doing so again in the future, would
nevertheless be required to pay assessments in perpetuity. Because this is an absurd result, we
conclude that this is an unreasonable interpretation of the statute which we cannot adopt. See City of
Rockwall v. Hughes, 246 S.W.3d 621, 625-26 (Tex. 2008) (noting that court cannot adopt construction
that leads to absurd results). The fact that the Farmers may have grown cotton and received income
from the sale of cotton before 2006 is not relevant to whether they are cotton growers for purposes
of the 2006 assessment.



Income from crop insurance proceeds, government subsidies, and disaster payments


 Finally, we turn to the Foundation's argument that anyone who receives crop insurance
payments, government subsidies, or disaster payments in lieu of income is also a cotton grower under
section 74.102(5). Specifically, the Foundation argues these payments are "income" that replace
the income that the Farmers would have received if they had sold their cotton in 2006. (8) For the
following reasons, we also find this argument unpersuasive.

 Under the first sentence of 74.102(5), "income from the sale of cotton" is required
in order for a person to be considered a cotton grower. Similarly, under the second sentence of
section 74.102(5), the definition of cotton grower may include a person who is entitled to "share in
proceeds from the sale of the cotton from the farm." While insurance and subsidy payments may
represent "income" or "proceeds," we cannot agree that these payments represent income or proceeds
"from the sale of cotton." While insurance and subsidy payments may be designed to replace income
that would have been made on cotton sales, if there had been any, the payments are not made in
exchange for the transfer of property. Therefore, the payments themselves are not income or proceeds
"from the sale of cotton." Further, under the plain language of the statute, there is no indication that
the legislature intended to include funds designed to replace lost income in the phrase "income from
the sale of cotton" or "proceeds from the sale of cotton." See TGS-NOPEC Geophysical Co. v. Combs,
340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language
with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

 In conclusion, under the unambiguous language of section 74.102(5) a person is a
cotton grower for purposes of the Foundation's 2006 assessment if he or she grew cotton and
received income from the sale of cotton in 2006. (9) See Act of May 29, 1997, 75th Leg., R.S., ch. 463,
§ 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). In addition, a person is a cotton grower
under section 74.102(5) if he or she is entitled to share in cotton that is grown in 2006 (and available
for marketing from a farm) or to share in the proceeds from cotton sold in 2006. Id. In this case, the
undisputed summary-judgment evidence shows that the Farmers did not sell any cotton in 2006,
directly or indirectly. Thus, in 2006 the Farmers did not receive "income from the sale of cotton"
and were not "entitled to share in the proceeds from the sale of the cotton." Accordingly, the Farmers
were not cotton growers under section 74.102(5) of the agriculture code in 2006, and they are not
subject to the 2006 assessment levied by the Foundation. Consequently, the trial court erred in
granting the Foundation's motions for summary judgment and denying the Farmers' motions for
summary judgment.

CONCLUSION

 In each cause, we reverse the trial court's summary judgment in favor of the Foundation
and render summary judgment in favor of the Farmers.


 __________________________________________

 Diane M. Henson, Justice


Before Justices Puryear, Henson and Goodwin

Reversed and Rendered

Filed: July 25, 2012
1. In four separate final judgments, the trial court awarded the Foundation (1) assessments
and late fees against Eusebio Saenz, Jr. in the amount of $39,211.25, attorney's fees and costs in the
amount of $617, and post-judgment interest; (2) assessments and late fees against Jorge Luis Garza
and Blanca Garza in the amount of $42,387.49, attorney's fees and costs in the amount of $692, and
post-judgment interest; (3) assessments and late fees against Jorge Luis Saenz in the amount of
$16,387.14, attorney's fees and costs in the amount of $684, and post-judgment interest; and (4)
assessments and late fees against Armando Gonzalez in the amount of $8,435.86, attorney's fees and
costs in the amount of $747, and post-judgment interest.
2. Originally, the Farmers also appealed on the alternative grounds raised in their responses
to the Foundation's motions for summary judgment as well as their own motions for summary
judgment. However, the Farmers subsequently withdrew their appeals on these alternative issues.
3. Section 74.102(5) now defines "cotton grower" as:

 

 a person who grows cotton intended to be commercial cotton. The term includes an
individual who as owner, landlord, tenant, or sharecropper is entitled to share in the
cotton grown and available for marketing from a farm or to share in the proceeds
from the sale of the cotton from the farm or from an indemnity or other payment
received from or related to the planting, growing, or failure of the cotton.


Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011).
4. The first sentence of section 74.102(5) no longer states that "cotton grower" means "a
person who grows cotton and receives income from the sale of cotton." Instead, the first sentence
of section 74.102(5) currently provides that "cotton grower" means "a person who grows cotton
intended to be commercial cotton." See Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011).
5. A dictionary definition of "sale" is "transferring the absolute or general ownership of property
from one person or corporate body to another for a price." Webster's Third New Int'l Dictionary
2003 (2002). 
6. To the extent the Farmers contend that they did not "grow[] cotton" under section 74.102(5)
because they planted a crop of cotton plants that ultimately failed to produce cotton, we need not
decide this issue. See Tex. R. App. P. 47.1 (court of appeals must hand down opinions that are as
brief as possible while addressing those issues necessary to final disposition of appeal).
7. The undisputed evidence shows that Eusebio Saenz never even attempted to grow cotton
prior to 2006.
8. Section 74.102(5) now specifically mentions "indemnity or other payment received from
or related to the planting, growing, or failure of the cotton." Tex. Agric. Code Ann. § 74.102(5)
(West Supp. 2011).
9. Because we conclude that section 74.102(5) is unambiguous, we do not consider whether
any interpretation of this provision by the Texas Department of Agriculture is entitled to deference
from this court. See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water, 336
S.W.3d 619, 625 (Tex. 2011).