# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-11-00787-CV

**Jorge Luis Garza, Individually and d/b/a My Three Daughters Farms
and Blanca C. Garza, Individually and d/b/a My Three Daughters Farms, Appellants**

**v.**

**Texas Boll Weevil Eradication Foundation, Inc., Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-07-008942, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

**&**

## NO. 03-11-00788-CV

**Jorge Luis Saenz, Appellant**

**v.**

**Texas Boll Weevil Eradication Foundation, Inc., Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-07-008891, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

**&**

NO. 03-11-00789-CV

Armando Gonzalez, Appellant

v.

Texas Boll Weevil Eradication Foundation, Inc., Appellee

FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
NO. C-1-CV-07-008924, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

&

NO. 03-11-00790-CV

Eusebio Saenz, Jr., Appellant

v.

Texas Boll Weevil Eradication Foundation, Inc., Appellee

FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
NO. C-1-CV-07-008892, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

M E M O R A N D U M   O P I N I O N

We grant the motion for rehearing filed by the Texas Boll Weevil Eradication Foundation, Inc. (the "Foundation"), withdraw the opinion and judgment dated July 25, 2012, and substitute the following in its place. We dismiss as moot the Foundation's motion for en banc reconsideration.

2

Appellants Jorge Luis Garza and Blanca C. Garza, Individually and d/b/a My Three Daughters Farms, Jorge Luise Saenz, Armando Gonzalez, and Eusebio Saenz, Jr. (collectively, "the Farmers") were each sued by the Foundation, seeking to collect assessments levied against the Farmers for the year 2006. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009) (current version at Tex. Agric. Code Ann. § 74.113 (West Supp. 2011)) (providing that Foundation is responsible for collection of assessments). In response to the parties' competing motions for summary judgment, the trial court granted summary judgments in favor of the Foundation and denied the Farmers' motions. In these consolidated appeals, the Farmers contend that the summary judgments should be reversed because the summary-judgment evidence establishes that in 2006 they were not "cotton growers," as defined in section 74.102(5) of the agriculture code, and therefore are not subject to the Foundation's 2006 assessment. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009) (current version at Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011)) (defining "cotton grower"). In each cause, we will affirm the trial court's grant of summary judgment in favor of the Foundation.

**BACKGROUND**

Chapter 74, subchapter d, of the Texas Agriculture Code designates the Foundation, a nonprofit corporation, as the entity charged with planning, carrying out, and operating programs to aid in the eradication of the boll weevil and the pink bollworm from cotton in Texas, under the supervision of the Texas Department of Agriculture. *See* Tex. Agric. Code Ann. § 74.1011 (West 2004). The statute also establishes the creation of six geographic zones, called "eradication

3

zones," and delegates to the commissioner of agriculture the authority to designate additional eradication zones, subject to referendum approval by affected cotton growers in the proposed zone. *Id*. at §§ 74.1041, .1042 (West 2004).

Subject to further referendum approval by the cotton growers in an eradication zone, the Foundation is authorized to collect assessments levied on cotton growers in that zone. Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009). The commissioner proposes the maximum assessment needed for each eradication zone based on criteria established by the commissioner. *Id*. Once approved, the Foundation calculates and collects the assessments on an annual basis, which are used, in part, to fund eradication programs. *See id*.; *see also* 4 Tex Admin. Code §§ 3.502 (2012) (Tex. Dep't of Agric., Approval of Assessment Rates and Collection Dates) (upon yearly recommendation of the Foundation, the commissioner determines the assessment rate and due date for each zone), 3.504 (2012) (Tex. Dep't of Agric., Payment of Assessments, Incentives for Early Payment; Penalties for Late Payment; Website) (assessments are due in full by due date set by commissioner each year).

In this case, the commissioner of agriculture proposed, and cotton farmers in the Lower Rio Grande Valley Eradication Zone approved, an annual assessment based on a dollar amount per acre planted during the assessment year. Each assessment is calculated by multiplying the cotton acreage planted, dryland or irrigated, that each farmer reports annually by the assessment rate. Subsequently, in 2006, the Foundation levied assessments against the Farmers, who farm in the Lower Rio Grande Valley Eradication Zone. When the Farmers failed to pay the assessments, the Foundation filed four separate but substantively identical suits against the Farmers, seeking to recover the 2006 assessments. *See* Tex. Agric. Code Ann. § 74.115 (West 2004). The Foundation

4

then moved for summary judgment in all four causes. The Farmers responded to each motion for summary judgment, objecting to the Foundation's summary-judgment evidence and claiming that the Foundation had failed to establish that the Farmers owe the 2006 assessments because (1) they are not "cotton growers" as defined by section 74.102(5) of the agriculture code, (2) the assessment is void because the assessment rate for 2006 was recommended and adopted in violation of the Texas Open Meetings Act, chapter 551 of the government code, and (3) chapter 74 on its face violates the Farmers' right to procedural due process under the Texas and federal constitutions and the Open Courts provision of the Texas Constitution. The Farmers also filed cross-motions for summary judgments, affirmatively raising these same issues and asserting that they do not owe the 2006 assessments as a matter of law. Upon considering the motions, in each cause the trial court denied the Farmers' motion for summary judgment and granted the Foundation's motion for summary judgment.[1]

These appeals followed. In one issue, the Farmers challenge the trial court's denial of their summary-judgment motions and the grant of the Foundation's summary-judgment motions.

---

[1] In four separate final judgments, the trial court awarded the Foundation (1) assessments and late fees against Eusebio Saenz, Jr. in the amount of $39,211.25, attorney's fees and costs in the amount of $617, and post-judgment interest; (2) assessments and late fees against Jorge Luis Garza and Blanca C. Garza in the amount of $42,387.49, attorney's fees and costs in the amount of $692, and post-judgment interest; (3) assessments and late fees against Jorge Luis Saenz in the amount of $16,387.14, attorney's fees and costs in the amount of $684, and post-judgment interest; and (4) assessments and late fees against Armando Gonzalez in the amount of $8,435.86, attorney's fees and costs in the amount of $747, and post-judgment interest.

The Farmers argue that the trial court erred because the undisputed evidence establishes that they are not "cotton growers," as defined by section 74.102(5) of the agriculture code.[2]

## STANDARD OF REVIEW

Summary judgment is proper if the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003). We review a trial court's rulings on summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as in this case, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we will consider the summary-judgment evidence presented by both sides, determine all questions presented, and if we find that the trial court erred, render the judgment the trial court should have rendered. *Id*.

The Farmers' argument on appeal is primarily based on construction of the Texas Agricultural Code, specifically the definition of "cotton grower" under chapter 74 of the code. Statutory construction is a legal question that we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, following first and foremost the plain language of the statute. *Id.* at 631-32; *GMC v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.).

---

[2] Originally, the Farmers also appealed on the alternative grounds raised in their responses to the Foundation's motions for summary judgment as well as their own motions for summary judgment. However, the Farmers subsequently withdrew their appeals on these alternative issues.

Where statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce absurd results. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). In addition, we look to the entire act in determining the legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011). We read every word, phrase, and expression in a statute as if it were deliberately chosen, and we presume that the exclusion of words from the statute is done purposefully. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). We presume that the legislature intended all provisions of the statute to be effective, with a just and reasonable result. *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010) (citing Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005)). Finally, where the statutory language at issue is ambiguous, its construction by an agency charged with its enforcement is ordinarily entitled to serious consideration so long as the agency's construction is reasonable. *Texas Citizens*, 336 S.W.3d at 625 (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747-48 (Tex. 2006)).

## DISCUSSION

Only "cotton growers," as defined by section 74.102(5), are subject to assessments levied by the Foundation. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009) (providing that commissioner shall propose "maximum assessment to be paid by cotton growers" and that "foundation may collect the assessment"); *see also* Tex. Agric. Code Ann. § 74.115 (providing that "a cotton grower who fails to pay an assessment

7

levied under this subchapter may be subject . . . to a penalty set by the commissioner"). While section 74.102(5) has been amended several times since its enactment, most recently in 2009, this case is governed by the version of section 74.102(5) in effect in 2006.[3] Under this version of section 74.102(5), "cotton grower" means:

> a person who grows cotton and receives income from the sale of cotton. The term includes an individual who as owner, landlord, tenant, or sharecropper is entitled to share in the cotton grown and available for marketing from a farm or to share in the proceeds from the sale of the cotton from the farm.

Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009).

The material facts in this case are undisputed. All of the Farmers planted cotton in 2006; however, as a result of drought, none of the crops succeeded and no cotton was sold on the market. Instead, the Farmers received crop insurance proceeds for their failed crops. In addition, some of the Farmers received federal disaster relief payments for 2006. The Farmers argue that, under these facts and the unambiguous language of the statute, none of them meet the statutory definition of "cotton grower."

---

[3] Section 74.102(5) now defines "cotton grower" as:

> a person who grows cotton intended to be commercial cotton. The term includes an individual who as owner, landlord, tenant, or sharecropper is entitled to share in the cotton grown and available for marketing from a farm or to share in the proceeds from the sale of the cotton from the farm or from an indemnity or other payment received from or related to the planting, growing, or failure of the cotton.

Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011).

8

The Farmers' argument with regard to the proper construction of section 74.102(5) is simple. The Farmers rely on the first sentence of section 74.102(5) to argue that in order to be considered cotton growers they must actually (1) grow cotton and (2) receive income from the sale of the cotton. The Farmers contend that both prongs of this definition must be satisfied, and because the undisputed evidence shows that none of the Farmers grew cotton in 2006 or received income from the sale of cotton in 2006, they cannot be considered cotton growers for purposes of the 2006 assessment.

In responding, the Foundation does not dispute that it may only levy an assessment against a person who is a cotton grower during the relevant assessment year. Instead, the Foundation argues that even if the Farmers did not "grow[] cotton and receive[] income from the sale of cotton" during the assessment year, the Farmers are nevertheless "cotton growers." *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). In part, the Foundation asserts that the "administrative framework of Chapter 74 highlights that the [Texas Department of Agriculture] understands that assessments must be paid regardless of whether a cotton grower receives income from the sale of cotton." Specifically, the Foundation contends that the department of agriculture has interpreted the statute as a whole to mean that assessments are to be paid by commercial cotton growers based on acreage planted with cotton, regardless of whether any cotton is actually grown or sold. The Foundation argues that this interpretation is "in harmony with the statute as a whole" and that we must give deference to the department's interpretation on this matter.

9

**Definition of "cotton grower" under section 74.102(5)**

In determining the proper construction of the term "cotton grower," we turn first to the plain language of section 74.102(5). The first sentence of section 74.102(5) defines "cotton grower" as "a person who grows cotton and receives income from the sale of cotton."[4] *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). The language in the first sentence of section 74.102(5) is seemingly straightforward and, in isolation, its plain meaning is readily apparent—a person is a cotton grower only if he or she (1) grows cotton and (2) receives income from the sale of cotton. *Id.* There is no language in this portion of section 74.102(5) that would suggest that the words chosen by the legislature in this first sentence have a meaning other than their common, ordinary one. *See Texas Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) ("In discerning [legislative] intent, we begin with the 'plain and common meaning of the statute's words.'").[5]

We agree with the Farmers, to the extent that the plain language of section 74.105(5) indicates that the legislature intended for a person to be considered a cotton grower only when he or she grows and receives income from an *actual* sale of cotton. *See id.* at 642 ("If the statutory language is unambiguous, we interpret it according to its terms, giving meaning to the language

---

[4] The term "cotton" is defined as "(A) a cotton plant; (B) a part of a cotton plant, including bolls, stalks, flowers, roots, and leaves; or (C) cotton products, including seed cotton, cottonseed, and hulls." *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009) (current version at Tex. Agric. Code Ann. § 74.102(4) (West Supp. 2011)) (defining "cotton").

[5] The term "sale" is not defined in chapter 74. A dictionary definition of "sale" is "transferring the absolute or general ownership of property from one person or corporate body to another for a price." Webster's Third New Int'l Dictionary 2003 (2002).

10

consistent with other provisions of the statute."). However, when interpreting a statute we do not look to any one phrase, clause or sentence in isolation, but to the statute as a whole. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002). Further, we must attempt to harmonize the statute's various provisions. *Id.*

**Other provisions of chapter 74, subchapter d**

Considering the administrative framework of subchapter d of chapter 74 as a whole, we conclude that the definition of "cotton grower," though apparently clear on its face, cannot be harmonized with other provisions in the statute. For example, as the Foundation points out, section 74.113 requires that the assessment proposed by the commissioner for each eradication zone "be adequate and necessary to achieve the goals" of the statutory program. *See* Act of May 8, 1995, 74th Leg., R.S., ch. 227, § 9, 1995 Tex. Gen. Laws 1976, 1979 (amended 2009). This amount is based on criteria established by the commissioner, including "the amount of acreage planted." *Id.* Further, section 74.121 provides that each person growing cotton in an eradication zone must furnish information to the Foundation concerning the size and location of all commercial and non-commercial cotton grown. Tex. Agric. Code Ann. § 74.121 (West 2004).

On the one hand, the statute mandates that a farmer is a cotton grower, and therefore subject to assessment, only if he or she grows cotton and receives income from the sale of cotton. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). On the other hand, there is no requirement that the assessment be calculated, in whole or in part, based on the amount of cotton that the farmer grew or sold during the assessment year. *See* Act of May 8, 1995, 74th Leg., R.S., ch. 227, § 9, 1995 Tex. Gen. Laws 1976, 1979

11

(amended 2009). Instead, the legislature has mandated that the assessment is to be based on the "amount of acreage planted," and consequently, persons growing cotton in the zone must report these amounts to the Foundation. *Id.*

A literal interpretation of the term "cotton grower"—that is, a person who grows and receives income from an *actual* sale of cotton during the assessment period—leads to an absurd result when applied. *See Entergy Gulf States*, 282 S.W.3d at 437 (explaining that plain language of statute is not applied when enforcing plain language would produce absurd results). Strictly construing and applying the plain language of the statutory definition of "cotton grower" means that a farmer who plants a cotton crop of 1,000 acres but either does not grow or does not sell any cotton is not liable for any assessment on the 1,000 acres planted. Meanwhile, a farmer who plants a cotton crop of 1,000 acres, of which only 10 acres of cotton is grown, harvested, and sold, would still be liable for an assessment based on the entire 1,000 acres planted. We presume that the legislature did not intend this absurd result, and therefore, we cannot conclude that the definition of "cotton grower" is limited to those persons who actually grow and sell cotton during an assessment year. *See id.*; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) ("We presume the Legislature intended a just and reasonable result by enacting the statute.").

When the plain language of a statute does not convey the legislature's apparent intent, we may resort to additional construction aids, including the objective of the law, the legislative history, and the consequences of a particular construction. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867-68 (Tex. 2009) (citing Tex. Gov't Code Ann. § 311.023 (West 2005)). Here, the objective of the statute is to provide management, through the Foundation, of programs designed to eliminate the boll weevil and pink bollworm from cotton in the State.

12

*See* Tex. Agric. Code Ann. § 74.1011(a) (West 2004).  Moreover, the purpose of the statutorily authorized assessment is to "ensure the stability of the cotton industry by eradicating the public nuisance caused by the boll weevil and the pink bollworm."  *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009).  Given these objectives, the definition of "cotton grower" is reasonably construed to mean a person who *plants* cotton *for* sale, i.e. for commercial purposes, during the assessment year, even when no cotton is sold.  This interpretation is in accord with the plain meaning of the statute, giving effect to the definition of "cotton grower" under section 74.102(5), the legislature's mandated method of calculating the assessment on an acreage-planted basis under section 74.113(e), and the required reporting of both commercial and noncommercial cotton fields under section 74.121.[6]

In this case, the undisputed summary-judgment evidence is that all of the Farmers planted cotton in 2006; however, as a result of drought, none of the crops succeeded and no

---

[6] Because we conclude that the definition of cotton grower under section 74.102(5) is susceptible to only one reasonable construction, we need not decide whether deference to any interpretation by the Texas Department of Agriculture is appropriate. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) (citing *Feiss v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006)) (explaining that rule applying deference to agency's construction of statute applies only if language at issue is ambiguous); *Texas Bd. of Chiropractic Examiners v. Texas Med. Ass'n*, 375 S.W.3d 464, 475 (Tex. App.—Austin 2012, pet. filed) (noting that reviewing court must first determine whether statute is ambiguous in order to determine whether agency deference applies).  However, we note that the interpretation that we adopt is consistent with the rules promulgated by the Texas Department of Agriculture.  For instance, under rule 3.72, all "commercial cotton growers" in the eradication zone must participate in the Foundation's eradication program and pay the assessment "in the amount and manner approved."  4 Tex. Admin. Code § 3.72(a), (b)(2) (2012) (Tex. Dep't of Agric., Requirements for Program Participation).  In addition, "commercial cotton growers" must annually report "all acreage planted with cotton and the location of such acreage in an active eradication zone."  *Id*. § 3.72(b)(1), (c).  Finally, "commercial cotton" is defined as cotton grown *for* sale or barter.  *Id*. § 3.51(2) (2012) (Tex. Dep't of Agric., Definitions) (emphasis added).

13

cotton was sold.  Thus, the undisputed summary-judgment evidence is that the Farmers planted the cotton for commercial purposes, even though ultimately there was no sale of crops.  Accordingly, the summary-judgment record establishes that the Farmers are cotton growers for purposes of the 2006 assessment.

Consequently, the trial court did not err in granting the Foundation's motions for summary judgment and denying the Farmers' motions for summary judgment.  The Farmers' sole issue on appeal is overruled.

## CONCLUSION

In each cause, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed on Motion for Rehearing

Filed:   December 19, 2012